George W. Cothran

*v.*

J. Alder Ellis *et al.*

*Filed at Ottawa September 24, 1883.*

1.   CUSTOM—*when presumed to be known.*   A party dealing in a particular market is presumed to know all the customs of such market bearing upon the transaction in which he is engaged.

2.   COMMISSION MERCHANT—*buying for customer "for future delivery"* —*must sell when directed.*   Where a broker or commission merchant purchases grain for future delivery, in his own name, for a customer, he is bound to obey a direction of the customer, his principal, to sell the same at a given time, or terminate his agency, if the character of the transaction be such as to render it practicable so to do, by putting his contract of purchase in such shape that it may be transferred, and transfer the same to his principal; and if he fails in this, and loss is thereby incurred, he can not recover of his principal for commissions, and money advanced, but the latter may recover of him whatever damages he may have sustained by the neglect to sell when ordered.   If the broker makes contracts of purchase in such manner that they can not practically be transferred to his principal, he, by necessary implication, undertakes to sell when ordered.

3.   SAME—*measure of damages on refusal to sell when ordered by his principal.*   Where a broker or commission man purchases in his own name grain for his principal, to be delivered at a future day, and the principal, before the grain is delivered, directs him to sell the same at a certain price then current in the market, for delivery on the day named in the original contract of purchase, and the broker refuses and neglects to make such sale when he might have done so, and a loss occurs, the measure of his principal's damage will be the difference between the price at which the grain was purchased and the price at which the broker was directed to sell it, less his commissions and other proper charges.   In such case the principal is not bound to go on the market and sell "short" an equivalent amount of grain for delivery at the same time of the other grain.

4. PRACTICE—*proposition of law on trial by court.* Where a proposition of law, correct in principle, upon the defendant's hypothesis, there being evidence on which to base it, is asked, the fact that the plaintiff has evidence tending to avoid and destroy its application affords no ground for its refusal. If there is such evidence, the plaintiff should ask a declaration of the law on his theory in a separate proposition, or as an accompaniment to that of the defendant.

APPEAL from the Appellate Court for the First District;—. heard in that court on appeal from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

Mr. GEORGE W. COTHRAN, *pro se,* and Mr. JOHN N. JEWETT, for the appellant, after stating and commenting upon the evidence *in extenso,* made the following among other points of law:

Commission men are the agents of the parties dealing through them. Ewell's Evans on Agency, 3; Story on Agency, sec. 33.

In the absence of express stipulation to the contrary, an agent is bound to obey instructions, or, as between himself and his principal, to bear the consequences of his refusal. Story on Agency, sec. 3; Ewell's Evans on Agency, sec. 1, p. 212.

To bind appellant with any rule or custom of trade, it should appear that the parties dealt with each other upon the basis of the same; or if such custom was waived, then, to hold appellant to the observance of the same, he was entitled to reasonable notice.

The court erred in refusing to allow the several propositions asked, and, aside from their sufficiency, the merits of the case are with the appellant.

Messrs. WASHBURNE & ROBBINS, for the appellees, after stating and commenting upon the facts at some length, made the following among other points:

The duty of agents to obey the instructions of their principals arises only from the express or implied agreement of the parties. Story on Agency, sec. 189.

Where an agent has made advances, relying on the goods for indemnity, the law will not compel him to part with them unless repaid his advances. *Field* v. *Farrington*, 10 Wall. 141; *Pultney* v. *Keymer*, 3 Esp. 182.

A principal is bound, within a reasonable time after being informed of his agent's disobedience to his instructions, to express his disapproval. He is not permitted to remain quiet and observe the subsequent course of the market, and then approve the agent's acts, if they prove advantageous, or disapprove them, should they result in loss. Silence under such circumstances amounts to assent and ratification. *Ward* v. *Warfield*, 3 La. Ann. 471.

The first, third and fourth propositions, if otherwise good, do not state properly the measure of damages. If a party willfully or negligently allows the damages to be enhanced, the increased loss justly falls on him. *Hamilton* v. *McPherson*, 28 N. Y. 72; *Dobbins* v. *Duquid*, 65 Ill. 467; *Grindle* v. *Eastern Express Co.* 67 Maine, 325; *State* v. *Powell*, 44 Mo. 439; *Baker* v. *Drake*, 53 N. Y. 217.

It is well settled in this State, that a person who deals in a particular market must be taken to deal according to the usage or custom of that market, whether he knew of such custom or not. At least he is presumed to know of and deal with reference to the customs of the trade. *Bailey* v. *Bensley*, 87 Ill. 559; *Lyon* v. *Culbertson*, 83 id. 36; *Corbett* v. *Underwood*, id. 324.

Mr. JUSTICE DICKEY delivered the opinion of the Court:

This is an action of assumpsit, brought in the Superior Court of the county of Cook, by appellees, against appellant. Issues were formed on the general issue pleaded to the declaration, and replied to a plea of set-off. The cause was tried by the court, a jury being waived. The issues were found for plaintiffs, and judgment rendered against defendant for $2788.63, and costs. This judgment, on appeal by defend-

ant, was affirmed in the Appellate Court, and from that judgment he appeals to this court.

Appellees were commission merchants dealing on the board of trade, and this action is for commissions and money paid by them for appellant on losses incurred in certain speculations conducted by them for appellant, but in their own names. The counter claim of appellant is for money of his in their hands arising from former transactions, and for losses incurred, as he claims, by reason of appellees having, as he insists, wrongfully refused to obey his directions as his agents. The sole controversy in the case arises upon the latter proposition.

It is not our province to pass upon the weight of any evidence given in the case. The sole questions presented for our consideration arise upon the refusal of the trial court to approve, and hold to be the law, certain propositions presented for that purpose by the appellant, at the trial and after the close of the evidence. The bill of exceptions, after stating the close of the evidence, says:

"And thereupon the defendant, by his counsel, then and there asked the court to hold the following propositions of law, to-wit:

"1. The court is requested to hold, as matter of law applicable to this case, that agents are bound to obey the orders and instructions of their principals, and that commission men are the agents of the parties dealing through them. The agent can not rightfully charge against his principal losses occasioned by his refusal to execute the reasonable and practicable directions of his principal. And if the court believes, from the evidence in this case, that the plaintiffs, as agents of the said defendant, by his direction, and for his account and risk, in the months of December, 1881, and January, 1882, sold wheat and other merchandise upon the Chicago market for future delivery, and subsequently, for the account and risk of the said defendant, and upon his order, purchased

wheat or other merchandise, also for future delivery, then, in the absence of an understanding or agreement to the contrary, said transactions were separate and distinct, and each of them was subject to the control and direction of the defendant, and the plaintiffs had no right, as against the defendant, whilst the said transactions were pending, (the time for delivery not having arrived in either case,) to close out said transactions, or either of them, or to offset the same against each other, upon their books, or otherwise, without, or in violation of, the directions of the defendant. And if the court finds, from the evidence, that the transactions of the defendant through the plaintiffs, as his agents, were as above stated, and further finds, from the evidence, that the plaintiffs neglected and refused to obey the reasonable and practicable directions of the defendant in respect to either or both of said transactions, and losses resulted by reason of such neglect and refusal, then, as between the plaintiffs and the defendant, such losses must be borne by the plaintiffs, and in addition thereto the defendant is entitled to have and recover of the plaintiffs such profits, if any, upon such transactions, or either of them, as the defendant would have made thereon if his directions had been carried out by said plaintiffs.

"2. Before any rule or custom of trade relating to the subject of margins between commission men and their principals can be applied to this case, it must be made to appear, by the evidence, that the parties dealt with each other upon the basis of such rule or custom. And if the court believes, from the evidence, that the plaintiffs, in dealing with the defendant, waived the requirements of any rule or custom of trade which they might have reasonably insisted upon, the defendant can not be made liable to the plaintiffs, according to the provisions of such rule or custom, in respect to such dealings, until after reasonable notice that the provisions of such rule or custom would be insisted upon; and what rea-

sonable notice in such case would be, is a question of fact, to be determined by the court under all the evidence in the case.

"3.   If the court finds, from the evidence, that in the month of January, 1882, the defendant had purchased, through the plaintiffs, as his commission merchants or agents, 5000 bushels of wheat deliverable in February, 1882, and 90,000 bushels of wheat deliverable in March, 1882, and on or about January 25, 1882, ordered the plaintiffs to sell all of said wheat, the 90,000 deliverable in March at $1.36½ per bushel, and the 5000 bushels deliverable in February at the then current price on the market, the plaintiffs were bound to obey such order, if it could have been executed, with reasonable diligence, by actually selling such wheat on the market; and if the court further finds that they refused or neglected to obey such order, and the price of wheat deliverable in February and March declined on the market, and any loss was incurred in consequence of such refusal or neglect to obey such order, such loss must be borne by the plaintiffs, and they have no right to charge it to the defendant, and the defendant is entitled in this action to recover of the plaintiffs, as damages, the difference between the price at which said wheat was purchased and the price at which he directed the plaintiffs to sell it, less their commissions and other proper charges, if any, as his profits on the transaction; and it is for the court to determine, from the evidence, the amount of such profits that the defendant is entitled to.

"4.   If the court finds, from the evidence, that the defendant, in January, 1882, through the plaintiffs, as his commission merchants and agents, purchased 5000 bushels of wheat for February delivery, and 90,000 bushels of wheat for March delivery, or either of said quantities, and had money to his credit with the plaintiffs as margins to protect plaintiffs from liability to loss on account of such purchase, and if the plaintiffs called upon the defendant for a reasonable sum, in

addition to the amount of his credit with them, to protect such purchase, and if the defendant neglected or refused to comply with such request, but on the contrary, on or about the 25th of January, 1882, ordered plaintiffs to sell said 90,-000 bushels of wheat for March delivery on the Chicago market, at $1.36½ per bushel, and the 5000 bushels of wheat for February delivery at the then current price on the Chicago market, and if the court further finds that they refused to obey defendant's order, and did not go on the market and sell said wheat, and that such order could have been complied with by them within a reasonable time, then the plaintiffs, by neglecting or refusing to obey such order to sell, in legal effect converted such wheat to their own use, and the defendant is entitled, in this action, to recover of the plaintiffs, as damages, the difference between the price at which said wheat was purchased and the price at which plaintiffs were directed to sell it, less plaintiffs' commissions and other proper charges, if any; and the court will ascertain from the evidence, and determine, the amount of such damages."

Which propositions of law the court refused to hold, and to such refusal the defendant, by his counsel, then and there duly excepted.

No other propositions were approved or passed upon by the court relating to either of the questions presented here. There is evidence in the case tending to prove every hypothesis contained in each of these propositions.

The second proposition was properly rejected. A party dealing in a particular market is presumed to know all customs of that market bearing upon the transaction in question. Counsel for appellees do not contend that the other propositions in question are not sound as general legal propositions, or that any other propositions were approved or declared by the court covering the same ground or recognizing the same principles. Their contention is, that the first, third and fourth propositions "do not properly state the law

applicable to the facts of this case. After full considera-
tion of the suggestions made in support of this proposition,
we can not give it our sanction." They suggest that the
duty of agents to obey the orders of principals arises from
agreement between them, and can only apply to transac-
tions in which the agent has agreed to act for his prin-
cipal, and they suggest that in this case the law will not
imply, from a consent of the broker to purchase, an additional
agreement to act as such agent in a subsequent transaction
to sell. They concede that at the time of the purchase,
or afterwards, these parties might have agreed that when
appellant should wish to make contracts of sale of the wheat
coming to him under the contracts of purchase, the appel-
lees would act as his agents in making such contracts of sale.
Their contention is, that the existence of such an agreement
is an essential basis of the duty of the broker, and hence
these three propositions were properly rejected, because "they
assume the existence of such an agreement," which is, as
they contend, assuming the existence of a fact not stated as
part of the hypothesis. This view we can not sanction. The
very nature of this transaction necessarily implies the sup-
posed fact, in the absence of other facts to repel the implica-
tion. The contract of purchase is in the name of the broker,
and with a party unknown to the customer. It may be, a
broker having made such a purchase, and wishing to termi-
nate his agency, may do so by so declaring, and by putting
his contract of purchase in such shape that it may be trans-
ferred to his customer, and by transferring the same to his
principal. There is no evidence tending to show that appel-
lees refused to continue the agency. The contract gives to
the purchaser the right to demand the wheat in March, at
the contract price. It is this right the broker held by con-
tract, and was required to sell. That right, in the then state
of the market, could have been sold at a premium of over
$2000. This the broker, upon the hypothesis stated, refused

to sell, and did not offer to turn over the same to his customer, so that he could sell the same. From the mode in which this business is done this may have been impracticable, and if so, the agency could not be regarded as ended until the contract of purchase was disposed of. It would be a monstrous doctrine to hold that a broker, having made such a purchase, could, at will, say to his customer, "I will not sell." This would place the customer at the mercy of the broker. If the broker consented to make these contracts of purchase, and did make them in such manner that they could not practically be transferred to his principal, he, by necessary implication, undertook to sell when ordered.

Again, it is said that it appears from the evidence that the market was running against the customer on certain prior sales which had been made by appellees for appellant, and that, by the agreement of the parties, these purchases were made for the purpose of having *a protection* against losses on such sales. There, however, is evidence tending to prove an express agreement that each transaction should be treated as a separate transaction; and the first proposition is based upon the hypothesis that the transactions were separate. Upon this hypothesis, even if the appellant was in default in not putting up margins upon his "short" sales, this can in no way affect the transaction of their refusing to sell the subject of his purchases. The third and fourth propositions ought to have been qualified by a statement of the hypothesis that the contracts of purchase and the contracts of sale were separate transactions, and not combined, by the agreement of the parties. If it be margins on the previous "short" sales appellees wanted, obviously, obedience to appellant's order to sell would have placed in their hands an increase of appellant's margins, to an extent exceeding $2000.

Again, it is contended that these propositions were properly condemned, because, it is said, there is evidence tending to prove that appellant acquiesced in the refusal of appellees

to obey his directions. That might have been a good ground for a ruling upon the law on that hypothesis, but is not an appropriate objection to the propositions as asked. If that excuse were relied upon, appellees might have asked that the law should be so declared, either as a separate proposition, or as an accompaniment of that asked by appellant.

Again, it is said the measure of damages stated is not correct,—that appellant, to save himself, as far as possible, from damages to arise from appellees' refusal to sell, was bound to go on the market himself and sell "short" an equivalent amount of wheat for February and March, and thus have made, by speculation, what he wished to save through a sale by appellees. Several cases are cited in support of this position. The case upon which most reliance is placed is that of *Baker* v. *Drake et al.* 53 N. Y. 217. There, a broker, having bought and holding stocks for a customer, much in the same way in which appellees bought and held this wheat for appellant, sold the same in the market without authority from his principal. Upon notice of the sale the customer repudiated the sale, and demanded that the broker should restore the same, which the broker failed to do. At the trial the broker was held liable, and adjudged to pay, as damages, the difference between the amount actually realized upon the sale and the amount which would have been realized if sold at the highest price indicated by the market at *any time* between the sale and the trial. This judgment was reversed, and, we think, very properly. The adoption of that measure of damages necessarily presupposed that had the stock been restored when demanded, the customer would have had the sagacity to have ordered a sale on the day the market was at the highest point. In the case at bar the question is very different. There is a fixed value when appellant ordered the sale, and there is a fixed amount to be deducted, which is the amount which appellees actually did realize for appellant when they actually did make a final disposition of this wheat

contract, which was February 9 or 10. The measure of damages approved in *Baker* v. *Drake*, was the difference between the amount actually realized at the sale, made without authority, and the amount it would have cost to have restored the stock to the customer at the time when he demanded it, having the right to so demand the same. This seems to be entirely in harmony with the measure of damages laid down in these propositions, which the court refused to approve. In both cases the damages are ascertained by a comparison of the amount actually realized, with that which would have been realized at once had the lawful demand of the customer been obeyed. We find nothing wrong in the measure of damages.

The judgment is therefore reversed, and the cause remanded, that it may be sent to the Superior Court for a new trial.

*Judgment reversed.*