EDWARD L. BREWSTER *et al.*

*v.*

D. F. VAN LIEW.

*Filed at Ottawa November 13, 1886.*

1. MEASURE OF DAMAGES—*for breach of contract by broker to hold stocks for his customer.* Where a broker purchases stocks for a customer, to be held subject to the order of the latter, and the broker, in disregard of the agreement, and without the consent of the customer, converts the stocks to his own use, the measure of damages in an action for the breach of the contract is, not the amount of money which may have been paid upon the contract by the customer, with interest, but the market value of the stocks. Such a case, in this regard, is to be distinguished from *Larrabee* v. *Badger*, 45 Ill. 441.

2. SAME—*of the form of action, as affecting the question of damages.* Nor does it matter, in respect of the rule of damages in such case, whether the action be for the conversion, or, in form, in assumpsit. In civil actions the law awards to the party injured a just indemnity for the wrong which has been done him, and no more, whether the action be in contract or tort.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. JOHN G. ROGERS, Judge, presiding.

Mr. FREDERIC ULLMAN, for the appellants:

The true measure of damages in a case where a broker disposes of the stock without authority, is such a sum as would put the customer in the position he would be in had not the wrong been done. *Baker* v. *Drake*, 53 N. Y. 211; *Markham* v. *Jandon*, 41 id. 235. See, also, *Gruman* v. *Smith*, 81 N. Y. 26; *Capon* v. *Thompson*, 86 id. 418; *Colt* v. *Owens*, 90 id. 368; *Work* v. *Bennett*, 70 Pa. St. 484; *Sturges* v. *Keith*, 57 Ill. 452; *Smith* v. *Dunlap*, 12 id. 184; *Cothran* v. *Ellis*, 107 id. 423.

The case of *Larrabee* v. *Badger*, 45 Ill. 440, has no application to a case like this. There, the money of the customer was not invested as directed.

Mr. A. J. HOPKINS, Mr. N. J. ALDRICH, Mr. F. H. THATCHER, and Mr. WALLACE W. HICKMAN, for the appellee, reviewed the facts and the evidence at considerable length, to show that this case is like that of *Larrabee* v. *Badger*, 45 Ill. 440, and not governed by the New York cases cited by appellants.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was an action brought by appellee, to recover from appellants money paid to them on a certain transaction in Denver and Rio Grande Railway Company stock.

On January 10, 1884, appellants, stock-brokers in Chicago, bought for appellee one hundred shares of said stock, furnishing a statement thereof, as follows:

"*Dr. D. F. Van Liew:*
                                     "CHICAGO, *January 10, 1884.*

"DEAR SIR—We have this day bought, for your account and risk, one hundred Denver, at 24. This account received

by telegraph.   Names of parties from whom above purchase was made will be given, if desired, as soon as advices are received by mail.

"Respectfully yours,

EDWARD L. BREWSTER & Co."

On the same day, appellee mailed to them $1000 in a letter, stating: "I herewith enclose you draft on Chicago for $1000, as per my promise to-day, on your purchase for me of one hundred shares of Denver and Rio Grande stock for 24, as per statement to me.   The balance you will please carry for me, at six per cent, until I either pay it or order it sold, and oblige, yours," etc.

About the 19th of January, 1884, appellee paid appellants $500 more, in response to the following call:

"CHICAGO, ILLINOIS, *January 19, 1884.*
"*D. F. Van Liew, Aurora, Illinois:*

"DEAR SIR—Your account requires additional deposit of $500.   Please favor us with the same.

"Respectfully yours,

EDWARD L. BREWSTER & Co."

On May 6, 1884, of his own volition, as appellee says, but as appellants say, on their request, appellee paid them $400 more, making, in all, $1900 paid by him.   The market still declining, on June 19, 1884, appellants wrote to appellee, at Aurora, for $500 additional.   Receiving no reply, they telegraphed him on the 23d of June, 1884, asking why he did not reply, and then, later in the day, still getting no reply, they telegraphed appellee, "We have put a stop-order on your hundred Denver, at six and one-half.   It will be sold at the market when it reaches there, unless you remit us before it is sold."   No response was received, and later, on the same day, the limit fixed by the stop-order was reached, and the stock was sold, on the Stock Exchange in New York, for $637.50, the market price of the stock at the time of the

sale being six and three-eighths. Appellee, shortly after, demanded that appellants deliver the stock to him, or refund to him the money paid. They refused, and this action was brought.

The parties differed in regard to the arrangement under which the stock was being carried. The claim of appellee was, that appellants were to carry it for him for six per cent interest, until he should pay for the stock or order it to be sold. Appellants claimed that they acted as brokers for appellee in the purchase of the stock, without any special agreement to carry it for him; that they required a margin of ten per cent on the par value of the stock, and that appellee sent them such margin, amounting to $1000, and that the subsequent sums paid and demanded were for additional margins. The jury found a verdict for plaintiff for $2055, on which the circuit court rendered judgment, which was affirmed by the Appellate Court for the First District, and the defendants took this appeal.

Objection is taken to the giving, by the circuit court, of the following instruction for the plaintiff:

"If the jury believe, from the evidence, that the defendants made a contract or agreement with the plaintiff, by which they were to purchase for him one hundred shares of Denver and Rio Grande railroad common stock, for the sum of $2400, on the condition that he should pay, on the day following said purchase, to them, the sum of $1000, and that they would carry the balance of said $2400 for plaintiff, on his paying them six per cent annual interest on such unpaid balance, and would hold said stock for his (plaintiff's) convenience, and that, in pursuance of said agreement, defendants did, in fact, purchase one hundred shares of said stock for said sum of $2400, and the plaintiff did, in fact, on the day following said purchase, pay the defendants the sum of $1000, and did, subsequently thereto, pay, by two different payments, the sum of $900 more, making, in all, $1900 on said $2400, and that

at the time of the last payment said defendant agreed with plaintiff to hold said stock for him, on the condition above stated, on his paying six per cent interest on all unpaid balance, annually, to suit plaintiff's convenience, even if said stock went to zero, and that, without any notice to, or authority, knowledge or consent of, plaintiff, defendants sold said plaintiff's stock, and on his tendering to them the balance of said $2400, together with interest on such balances, if the proof shows such tender was made, at the rate of six per cent per annum, declined and refused to deliver to him said stock; and if you further believe, from the evidence, that plaintiff did tender such balance, with interest, on said stock, as aforesaid, and defendants declined to receive such tender, and declined to deliver to plaintiff said stock, and that thereupon the plaintiff demanded from defendants the money he had advanced them, and that defendants failed and refused to pay it, then, on that state of facts, plaintiff is entitled to recover all moneys advanced by him on said purchase of defendants, together with legal interest thereon, and you should so find by your verdict."

The giving of this instruction is supposed to be justified by the case of *Larrabee* v. *Badger*, 45 Ill. 441. The state of facts in that case and in the present is quite unlike. The plaintiff had there, on March 17, 1866, intrusted $2000 to the defendant, to purchase for the plaintiff two hundred shares of the stock of the Chicago and Alton Railroad Company. On March 19, 1866, the defendant notified the plaintiff that he had bought for him, for his account and risk, in New York, two hundred shares of the stock, at 89½. On the 4th of April, following, the plaintiff made a demand on the defendant for this stock, and on the refusal of the defendant to deliver it to him, the plaintiff then demanded a return of his money. This the defendant refused, saying he had failed, and had made an assignment, and was unable to comply with the demand, and the action was to recover back the $2000, and

interest. The court there say: "Here the plaintiff had advanced $2000 to the defendant, with which the defendant was to buy two hundred shares of stock in the Chicago and Alton railroad for the plaintiff. The proof is, the defendant bought the stock in his own name, and had the same placed to his credit in New York, and that the name of the plaintiff did not appear in the transaction, and that the defendant sold this stock and appropriated the proceeds to his own use, and all without the knowledge or consent of the plaintiff." Again: "The facts do not show a contract for the purchase and delivery of stock, but an undertaking on the part of the defendant that he will buy two hundred shares of stock for the plaintiff, with the plaintiff's money. This is the whole extent of the contract, and on failure to buy for plaintiff, and by appropriating the money to his own use, justice would seem to demand, on his failure to buy the stock as instructed, the defendant should refund the money, with interest." And further: "The position this defendant occupies in relation to the plaintiff, most clearly is, not that of a vendor of stock to plaintiff, but as an agent, who has received of the plaintiff $2000 to invest for him in a particular way. By executing the trust, the defendant would have discharged himself from liability; but it was no execution of it to buy and sell the stock in his own name, and for his own use, without authority, and he must now account for the $2000."

Thus it will be seen that the whole ground upon which that decision proceeded was a misappropriation of the money,—that the money had been intrusted to the defendant for one purpose, of benefit to the plaintiff, and the defendant appropriated it for another purpose, for his own sole benefit; and it was held that an action would lie for the money, as for money had and received for the use of the plaintiff. In the present case there was no such misappropriation of money intrusted to the defendants, but the money was applied to the very purpose appellee designed to have it applied, to-wit, the

payment of the purchase price of stock which appellants had purchased for appellee. In the case cited, Larrabee gave Badger the full purchase price of certain shares of stock, Badger to buy them for Larrabee, in Larrabee's name, which he did not do, but bought them in his own name, and subsequently converted them to his own use, whereas, in the pres-. ent case but a small portion of the purchase money for the stock was furnished by appellee, the appellants having advanced the residue, and holding the stock, as the situation implied, as security or in pledge for their advances, commissions and interest.

The relation which exists between a broker and his customer in the case of the holding and carrying of stocks, as here, is declared in the leading case of *Markham* v. *Jandon*, 41 N. Y. 235, defining the relative rights and duties of the broker and customer. It is there laid down, that in advancing the money by the broker to complete the purchase of stock, the relation of debtor and creditor is created, and that thereupon the broker becomes a pledgee of the stock for the money advanced in its purchase—that the contract between the parties is, in spirit and effect, if not technically and in form, a contract of pledge. And it was there held, that for selling the pledge without authority, the measure of damages would be the difference between the amount for which the stock was sold, and its highest market value down to the time of trial. This rule of damages was modified in the subsequent case of *Baker* v. *Drake*, 53 N. Y. 311. It was there said: "Assuming that the sale was in violation of the rights of the plaintiff, what was the extent of the injury inflicted upon him? * * * If, upon becoming informed of the sale, he desired further to prosecute the adventure and take the chances of a future market, he had the right to disaffirm the sale, and require the defendants to replace the stock. If they failed or refused to do this, his remedy was to do it himself, and charge them with the loss reasonably sustained in doing so. The advance

in the market price of the stock, from the time of the sale up to a reasonable time to replace it, after the plaintiff received notice of the sale, would afford a complete indemnity.  * * * If the broker has violated his contract, or disposed of the stock without authority, the customer is entitled to recover such damages as would naturally be sustained in restoring himself to the position of which he has been deprived.  He certainly has no right to be placed in a better position than he would be in if the wrong had not been done." The same rule was held in *Gruman* v. *Smith,* 81 N. Y. 26.   In *Colt* v. *Owens,* 90 N. Y. 368, the defendants purchased and agreed to carry certain shares of stock for the plaintiff, until instructed by him to sell, or for a period of six months.   Defendants sold the stock without authority, and notified the plaintiff.   In an action by the plaintiff, the testimony showed that for thirty days after the sale the stock could have been purchased in the market for the price at which it was sold, or a less sum, and the court below held that only nominal damages could be recovered, and directed a verdict accordingly.   The judgment was affirmed.   In *Sturges* v. *Keith,* 57 Ill. 452, it was held that in an action for the conversion of personal property, the proper measure of damages is the market value of the property at the time of the conversion, and the court recognized no distinction where the property converted was stocks. In *Smith* v. *Dunlap,* 12 Ill. 184, it was held that the measure of damages in the case of a breach of contract for the sale of a chattel, is the cash value of the article at the time it should have been delivered, and it was said:   "We have no hesitation in holding the rule applicable to contracts for the sale or delivery of personal property, without regard to the circumstance whether the price has been paid or not.  If unpaid, the purchaser recovers the difference between the price he agreed to pay and what the commodity was worth when it should have been delivered; if paid, he is entitled to recover the market value of the article when the delivery ought to

36—119 ILL.

have been made, and interest, in the way of compensation for the delay." He may recover the market value of the article, and not the purchase price paid for the article, contrary to what is asserted in the present case to be the rule, that where one party to a contract refuses to complete it, the other party, being without fault, may sue for and recover back any money paid upon the contract. True, the case at bar was not an action for the conversion of the stock, but, in form, was in assumpsit; but, as said in *Baker* v. *Drake, supra*, (page 220,) "the rule of damages should not depend upon the form of the action. In civil actions the law awards to the party injured a just indemnity for the wrong which has been done him, and no more, whether the action be in contract or tort; except in those special cases where punitory damages are allowed, the inquiry must always be, what is an adequate indemnity to the party injured, and the answer to that inquiry can not be affected by the form of the action in which he seeks his remedy. Chancellor KENT, in delivering the opinion of the Court of Errors, (*Cortelyon* v. *Lansing*,) though the action was in assumpsit, seeks the rule of damages in the principle applicable to an action for conversion." Appellee's real grievance is, the not carrying the stock until he should pay for it or order it to be sold—that instead of so carrying it, appellants sold it without his authority—that there has been a disposal of the stock without authority—a conversion of it. Suppose the stock had been carried, as appellee claims it should have been, he would then have had his stock when he had paid for it, and nothing more. In not having the stock, the loss which he suffers is the value of the stock, and nothing more. All that he justly can be entitled to have is the stock, and he is not, in justice, entitled to be placed in a better position than if he had the stock. The injury sustained is the being deprived of the stock, and the compensation which the law gives for the deprivation of property is the value of the property, and never the price which the owner had paid for the

property,—which latter was the rule of recovery laid down in this case.

Remark is made upon the title to the stock not having been taken in the name of appellee. He could not have expected to have the title until he had paid for the stock. From the nature of the relation between the parties, appellants were holding the stock as security for their advances, and to give them the benefit of an enforcible lien it was necessary that the title should be within their control, in order to enable them to realize on the stock, should there be need to do so. See *Horton* v. *Morgan,* 19 N. Y. 170.

We hold the instruction to be erroneous in laying down a wrong rule of the measure of damages.

The judgments of the Appellate and circuit courts will be reversed, and the cause remanded to the circuit court.

*Judgment reversed.*