## William B. Schaefer, Defendant in Error, v. John Dickinson, Plaintiff in Error.

### Gen. No. 13,830.

1. BROKERS AND FACTORS—*right of property in stock purchase.* Upon the purchase of stock through a broker, the full purchase price not being advanced by the purchaser, the stock becomes the property of the purchaser subject to a pledge thereof to the broker for the balance of such purchase price.

2. SALES—*within what time repudiation of unauthorized, must be made.* As a rule, a reasonable time for consideration is allowed before the obligation to repudiate an unauthorized sale arises; but, under some circumstances, such as those which existed in this case, an immediate repudiation is required.

3. MEASURE OF DAMAGES—*in action for unauthorized sale.* The measure of damages for the unauthorized sale of stock by a broker is the difference between the amount obtained and the amount which the owner could have gone into the market and replaced his converted stock for, within a reasonable time after obtaining knowledge of the sale.

Assumpsit. Error to the Municipal Court of Chicago; the Hon. FREEMAN K. BLAKE, Judge, presiding. Heard in this court at the October term, 1907. Reversed and remanded. Opinion filed May, 18, 1908.

D. MONCRIEFFE KIRTON, for plaintiff in error.

CHARLES A. BUTLER, for defendant in error.

MR. JUSTICE BROWN delivered the opinion of the court.

This is a writ of error to reverse a judgment of the Municipal Court for $905, rendered in favor of the defendant in error, Schaefer, against plaintiff in error, Dickinson, on the verdict of a jury.

The facts are these: William B. Schaefer, an accountant, residing in Chicago, was dealing in stocks before and in July, 1906, and for a few weeks thereafter, through the stock broker's office of John Dickinson, doing business as John Dickinson & Co., in that

city. Dickinson has an office also in New York city. It is apparent from the whole record that the transactions were of the usual kind when stocks are bought or sold on margins through a broker. Mr. Schaefer seems to have been speculating on his own account and for a sort of sub-clientage, whom he speaks of as his "customers," and on whose trades he received commissions. He had two accounts on the books of Dickinson & Co., one under the title of M. S., in which he says he carried trades both for himself and "customers," and another under the title of M. S. Special, which comprised only his individual trades.

The account which appears in the record as a duplicate of that given to the plaintiff on August 25 or August 26, 1906, would by itself seem to indicate that although Schaefer was indebted on it to the brokers to the amount of $98.65, on July 16, 1906, they sold "short" for him twenty Union Pacific shares at 143¾ on that date, and "bought it in" for him (so as to make delivery possible) at 143 on July 19, making $9.60 profit for him on that transaction, and then on July 20 sold "short" again twenty shares Union Pacific at 144¾, and that as these shares had not been "bought in" by August 2, 1906, the plaintiff was on that date still "short" that number of shares. On that date the "trade" seems to have been transferred to the other account (no note of the contents of which appears in the record), and the M. S. Special account closed by debiting it with the twenty shares at the nominal balance of the account, $2,807.57.

We may infer that the account to which the trade was transferred had a corresponding credit of $2,807.57, and a debit memorandum of "Short—20 Union Pacific." A transaction of a short sale, and a quick repurchase in Pennsylvania stock has a place also in the M. S. Special account in July.

But we are called on, nevertheless, by the rulings of the court below on the trial and the evidence therein taken, as well as by the theory on which this cause has

been argued by both sides in this court, not to consider the transaction of July 19 what it appears on the face of this account to be—a "buying in" to fill "a short sale"—but as an investment independent of any preceding transaction, and the sale of July 20 not to be another and a second "short sale," which the plaintiff contends he never ordered made, but as a sale of the stock purchased as an investment on the nineteenth. Therefore, although they look to us very much like something else, we will so consider them and eliminate the short sale of July 16 from consideration altogether. It was excluded from the evidence by the rulings of the court.

Several things conceded by the parties litigant make the question here a very simple one.

It is conceded, for example, that the plaintiff ordered the stock in question bought on July 19, and that it was actually bought by the defendant broker. By the theory of the law which, although repudiated in Massachusetts, has been adopted in New York and by the United States Supreme Court (Richardson v. Shaw, vol. 28 Supreme Ct. Reporter, p. 512, and cases therein cited), and which may be assumed to have been also approved in this state (Brewster v. Van Liew, 119 Ill. 554), the twenty shares of Union Pacific Railroad stock then became the property of the plaintiff, subject, however, to a pledge of it to the defendant broker for the full amount for which it was bought, and perhaps for the balance of the account from former transactions as well.

It is conceded that on July 20, 1905, the next day, the defendant broker sold that stock, supposing he had an order to do so from the plaintiff, through an agent. It is conceded also that the plaintiff denied making the order in question, or giving any authority to anyone to make it, and that the defendant could offer no proof to the contrary.

It is conceded that the question of confirmation of the sale or of the supposed authority was left to the

Schaefer v. Dickinson.

jury, and that by their verdict they have indicated that on this point they held with the plaintiff.

It is, however, urged, and we think with reason, that the instruction or charge given to the jury on the subject of this claim of ratification was somewhat misleading. The theory seems to have been adopted by the court that it was permissible to the plaintiff to accept or to disaffirm the sale, and that this had something to do with "the completion of the sale" (Abstract p. 44) and "the right in the plaintiff to control the stock" (Abstract p. 43).

Under the theory of the law to which we have alluded and to which we must refer this case, these matters were not involved. The broker to whom the stock was pledged had actually sold it. He passed a good title to it to the innocent purchaser on the stock exchange who bought it. He did it wrongfully, we must assume. He was not morally delinquent, because he thought he had an authorized order to sell; but legally he was delinquent. An action of trover accrued to the plaintiff. But the plaintiff might have waived that action and ratified the order and the sale by keeping silent when informed of them. We think, moreover, that while in a sense a reasonable time is always allowed for consideration before such a ratification is presumed from silence, it is practically true that to prevent the inference of ratification attaching, an immediate repudiation is necessary after the knowledge of the alleged order and resulting sale came to the plaintiff, and that the jury should, at least in this case, have been instructed that such repudiation must have been promptly made. But in any event it is conceded that on August 25 or August 26, 1906, the plaintiff did learn, whether he knew it before or not, that the stock had been sold and did then repudiate the sale and deny the order and authority under which it was made. This is the essential occurrence and conversation of those dates. We do not think that the evidence of the plaintiff, assuming it to be true, that the defendant

replied to the repudiation and denial, "Well, I will look into it this afternoon and let you know," and then immediately left for New York, on his return from which on October 1 he answered the question of plaintiff, "What disposition are you going to make of this Union Pacific stock which was sold for my account?" "Nothing—absolutely nothing," adds or takes away anything from the situation or changes it in any way. The failure of the defendant to say anything on the afternoon in question, and his going to New York, apprised the plaintiff that he had no promise of the defendant to replace the stock to rely on.

The right of action was then complete in the plaintiff, if it existed at all, and the question at once becomes controlling, what rule of damages is applicable? Does that rule involve the recovery of the difference between the price procured for the stock and credited to the plaintiff, and the highest price which it afterward reached before the suit was begun, or before the trial took place, or the price at some time selected by the plaintiff (which last, in effect, although not in terms, was what the plaintiff was held by the court below to be entitled to in this case), or the difference between the price procured and what the plaintiff could have gone into the market and replaced his converted stock for, within a reasonable time of his getting knowledge of the sale? Each of these alternatives has been adopted as the true rule by different courts, but the rule in Illinois seems clearly enough stated in Brewster v. Van Liew, 119 Ill. 554, in which, while holding to the doctrine of Markham v. Jaudon, 41 N. Y. 235, as to the relations of broker and customer, the Supreme Court of Illinois repudiates the doctrine of that case as to the measure of damages, and adopts that of Baker v. Drake, 53 N. Y. 211. In so doing it was but reaffirming the doctrine laid down for the court by Judge McAllister in Sturges et al. v. Keith, 57 Ill. 451.

It is clear to us that Brewster v. Van Liew, and not Cothran v. Ellis et al., 107 Ill. 413, states the rule ap-

plicable here. Cothran v. Ellis was the case of an order to sell not performed; Brewster v. Van Liew a case, like this, of an unauthorized sale. The doctrine stated by Brewster v. Van Liew is that the measure of damages is the difference between the amount obtained and that at which the plaintiff, within a reasonable time after learning of the sale, could have replaced the stock.

The jury in this case were therefore erroneously instructed on the measure and rule of damages applicable. The rule which Brewster v. Van Liew announces was repudiated by the trial judge, and another and erroneous one substituted. For this reason the judgment is reversed and the cause remanded to the Municipal Court.

*Reversed and remanded.*