586    Appellate Courts of Illinois.

Carroll, Schendorf & Boenicke, Inc. v. Simons, 245 Ill. App. 586.

---

## Carroll, Schendorf & Boenicke, Inc., Appellee, v. Esther Simons, Appellant.

### Gen. No. 31,748.

1. Customs and usages—*presumption of contract referring to custom.* In the absence of specific agreement the law will presume that parties contract with reference to the general custom and usage of the business or profession involved.

2. Brokers—*rental commission usage as governing in absence of agreement.* Proof of a general custom of real estate brokers to charge a certain commission on unexpired terms of leases withdrawn from them may prevail in the absence of evidence of a specific agreement.

3. Brokers—*agreement as to commission not preventing increase.* Evidence that a real estate broker agreed to charge a certain commission on leases, held not to prevent the broker from receiving a larger commission where the owner received statements from the broker for increased commission for over a year without objecting.

Appeal by defendant from the Municipal Court of Chicago; the Hon. A. W. Summers, Judge, presiding. Heard in the first division of this court for the first district at the March term, 1927. Affirmed. Opinion filed October 10, 1927. Rehearing denied October 24, 1927.

Edward N. Sherburne, for appellant.

Henry M. Hagan, for appellee.

Mr. Justice McSurely delivered the opinion of the court.

This is a suit of the fourth class brought by plaintiff, real estate brokers, to recover 3 per cent com-

mission on the unexpired terms of certain leases, which it procured, of property belonging to defendant. Upon trial by the court it had a verdict for $214.87, from which defendant appeals.

Defendant purchased the property in March, 1925. Before this time the building had been managed and operated by plaintiff as agent for the prior owner. An oral contract with defendant for the continued management of the building was made, F. J. Rodgers representing plaintiff and B. F. J. Odell, an attorney, representing the defendant and her daughter, Fannie Simons.

The decisive question is whether plaintiff agreed, in the event defendant terminated plaintiff's management, to claim no commissions on the existing leases and also none on leases thereafter procured by plaintiff.

October 28, 1926, defendant notified plaintiff by letter that its services were no longer required in handling the property.

Odell, testifying on behalf of defendant, says that he asked Rodgers whether there would be any charge made for leases procured by plaintiff in the event Mrs. Simons wanted to change the agency for any reason, to which Rodgers responded, ''No, there will not.'' This testimony is corroborated by Fannie Simons. Rodgers testified that he told them that in the event there was a change in management the plaintiff would make no charge for commissions on leases then in existence. ''The question of the leases then in existence was specifically talked about, but nothing was said about any new leases''; that nothing was said or discussed about unexpired leases except as to ''those then in existence.'' On these Rodgers agreed, acting for the plaintiff, to make no charge. Rodgers further testified that none of the leases mentioned in the statement of claim was in existence at the time defendant bought the building or at the time he had the conversation with

Odell and Miss Simons; that all of such leases for which commission is claimed were new leases made by the plaintiff through its men.

The credibility of witnesses is peculiarly for the trial court to determine. It has opportunities which we have not for determining this. There is nothing inherently improbable about Rodgers' version of the conversation, namely, that the agreement to make no charge in the event of change of management applied only to the leases then in existence. If defendant's attorney understood that no charge was to be made not only on existing leases but also on leases made in the future, it would have seemed the part of prudence to have this definitely stated in writing. We would not be justified upon the record in concluding that the finding of the court in this respect was contrary to the weight of the evidence.

In the absence of any specific agreement the law will presume that the parties contracted with reference to the general custom and usage. *Green v. Ryan,* 242 Ill. App. 466, and cases there cited; *Cothran v. Ellis,* 107 Ill. 413. This is a well-known rule. Plaintiff by an abundance of testimony proved that it was the custom among real estate brokers in Chicago, and had been for a great many years, to charge 3 per cent on the unexpired term of leases withdrawn from the broker's management. It is reasonable to assume the existence of some custom in this respect; otherwise, a broker could be deprived of all compensation for his services by the simple act of changing the management of the property. As the evidence showed that there was no contract between the parties with reference to new leases procured by plaintiff in the event of the withdrawal from it of the management of the property, the custom in the real estate business here will obtain.

Complaint is made of the fact that, as Rodgers testified, plaintiff agreed to manage the building for two and a half per cent commission on leases but subse-

quently changed to 3 per cent, and that plaintiff is now claiming on the basis of 3 per cent. It appears that some time after the conversation between the parties Rodgers wrote a letter to defendant giving his reasons why the two and a half per cent charge was originally made and stating that the plaintiff would have to charge the full 3 per cent rate. That was the rate charged for over a year and statements based on the 3 per cent rate were sent to defendant, which she never questioned nor criticized in any way but accepted as correct.

No convincing reason appears for disturbing the judgment, and it is affirmed.

*Affirmed.*

MATCHETT, P. J., and O'CONNOR, J., concur.