HENRY HESS et al., Respondents, *v.* ROSALIE RAU, as Executrix, etc., Appellant.

95   359
113   605
95   35ʊ
118   60ɔ
95   359
131   530

Where a broker had sold stock short for a customer, and in accordance with the usual custom had borrowed the stock for delivery, becoming himself obligated to return the borrowed stock, and borrowing from time to time as required to replace the stock previously borrowed, and while the transaction was so kept alive the customer died, *held*, that the broker had authority, acting in good faith, to continue it in the same manner until the appointment and qualification of a legal representative of the estate of the deceased, upon whom the proper notice could be served in order to close it.

The rule that the death of the principal revokes the authority of the agent does not apply in such case, as the agency is coupled with an interest.

As to whether circumstances might not exist which would justify the broker in closing the transaction without awaiting the qualification of an executor or administrator, *quære*.

(Argued March 7, 1884; decided March 21, 1884.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made November 16, 1883, which affirmed a judgment in favor of plaintiffs, entered upon a verdict and affirmed an order denying a motion for a new trial. (Reported below, 17 J. & S. 324.)

This action was brought to recover a balance alleged to be due plaintiffs, a firm of stock brokers, on account of certain stock transactions carried on by them for defendant's testator.

The facts so far as material are stated in the opinion.

*Leopold Wallach* for appellant. There is no presumption in favor of the account because it was kept some time without objection as defendant's testator was excused by reason of his illness. (*Lockwood* v. *Thorne*, 18 N. Y. 288, 289.) The relationship of the parties was that of principal and agent, and their rights so far as the short sales are concerned must be determined by the laws affecting that relation. (Story on Agency [9th ed.], 31, § 23; *Pott* v. *Turner*, 6 Bing. 702–706; Dos Passos on Stock Brokers, etc., 180–182 ; *Knowlton* v. *Fitch*, 52 N. Y. 288; *White* v. *Smith*, 54 id. 525; *Staples* v. *Gould*, 9 id. 520; *Bruce's Appeal*, 5 Sm. [Penn.] 294; *Baker* v. *Drake*, 66 N. Y. 518; 53 id. 211; *Markham* v. *Jaudon*, 41 id. 235, 240, 241; *White* v. *Smith*, 54 id. 522.) Death of the principal is a revocation of the agent's authority. (Story on Agency [9th ed.], 579, §§ 462, 481; *Motley* v. *Head*, 43 Vt. 633; *Davis* v. *Lane*, 10 N. H. 156, 159 ; *Oppenheim* v. *Wolf*, 3 Sandf. 571; *Helmer* v. *St. John*, 8 Hun, 166 ; *Watt* v. *Watt*, 2 Barb. Ch. 371; *Hunt* v. *Rousmanier*, 8 Wheat. 174–217; *Saltmarsh* v. *Smith*, 32 Ala. 407; *Gale* v. *Tappan*, 12 N. H. 146–148 ; *Coney* v. *Sanders*, 28 Ga. 511; *Lincoln* v. *Emerson*, 108 Mass. 87; *Lepard* v. *Vernon*, 2 V. & B. 51; *Houstoun* v. *Robertson*, 6 Taunt. 448; Story on Agency, §§ 488, 885; *Lacy* v. *Hill*, L. R., 8 Ch. App. 921; *Thacker* v. *Hardy*, L. R., 4 Q. B. Div. 689; L. R., 18 Eq. Cases, 182.) The unexpected emergency, the death of Henry Rau, and the dangerous fluctuating character of the stocks dealt in, were a sufficient authority to plaintiffs to sell the stocks without notice. (*Liotard* v. *Graves*, 3 Caines, 226; *Williams* v. *Shackelford*, 16 Ala. 318; *Greenleaf* v. *Moody*, 13 Allen, 363; *Lawlor* v. *Keoquick*, 1 Johns. Cas. 175–179; *Judson* v. *Sturges*, 5 Day, 556, 560; *Forrestier* v. *Boardman*, 1 Story, 43 ; Story on Agency, §§ 885, 483; *Hunt* v. *Rousmanier*, 8 Wheat. 174, 203.)

*D. M. Porter* for respondents. Short sales are legal. (*White* v. *Smith*, 54 N. Y. 522; *Knowlton* v. *Fitch*, 52 id. 288; *Cameron* v. *Durkheim*, 55 id. 425.) As no person had qualified to administer Henry Rau's affairs up to a few days before

notice to close the transactions was given to the defendant, the plaintiffs were not required to close the transaction, except as and at the time they did. (*White* v. *Smith*, 54 N. Y. 522; *Hill* v. *Lacy* [*Scrimgeour's Appeal*], 8 Law Rep. 921; 7 Eng. Rep. [Moak's ed.] 473; Dos Passos on Stock Brokers, etc., p. 182, 277; *Prince* v. *Robinson's Adm'rs*, 15 Rep. 163; *Gruman* v. *Smith*, 81 N. Y. 25.) It was proper to show the receipt of the account and notice by the defendant and her refusal to refer, and that she did not object to the time, place and manner at and by which the stocks were closed out. (*Willoughby* v. *Comstock*, 3 Hill, 389.)

ANDREWS, J. We are satisfied from a perusal of the evidence that short sales of six hundred shares of the Delaware, Lackawanna and Western railroad stock, and three hundred shares of the stock of the New Jersey Central Railroad Company, were made as claimed by the plaintiff in July and August, 1880, prior to Rau's death, by his orders and upon his account, and that the finding of the jury upon this point cannot be disturbed.

The principal controversy arises out of the conduct of the plaintiffs in respect to the stock speculation subsequent to Rau's death, which occurred October 29, 1880. At that time the transaction had not been closed. The plaintiffs, on the sale of the stocks, borrowed them for delivery according to the usual custom, and had become obligated to return the borrowed stocks to the persons from whom they had been borrowed when called for. Rau did not furnish the stocks for delivery, but relied upon the brokers to procure them according to the custom of the street in the usual way. Rosalie Rau, the executrix, qualified December 29, 1880, and then for the first time was there a legal representative of Rau's estate. During the time intervening between the death of Rau and the qualification of the executrix, the plaintiffs kept the transactions alive by borrowing stocks from time to time to replace the stocks previously borrowed which had been called for. On the 5th of January, 1881, they notified the executrix to furnish additional margin,

and that in default of so doing they would buy in the stocks on her account, January 7, 1881, at a time and place named in the notice. The margin not being furnished, the plaintiffs bought in the stocks on that day at a loss on the transactions of $9,437.98.

It is claimed by the counsel for the defendant that upon the familiar doctrine of agency, the death of Rau operated as a revocation of the plaintiffs' prior authority. The application of this principle, it is said, disabled the plaintiffs from continuing the speculation by borrowing stocks thereafter on account of his estate. This claim is supplemented by the further one that the plaintiffs were bound within a reasonable time after Rau's death to close the transaction by buying in the stocks, although no representative of his estate had meanwhile been appointed. We are of opinion that neither of these claims can be sustained.

It is unnecessary to explain the nature of a short sale of stock, or to re-state the practical methods adopted to accomplish the purpose of the seller who usually has nothing to sell, but wants to realize a profit by selling something he has not got at the price of to-day, and buying it in at a lower price to-morrow. These operations have been explained in several cases in this court. (*Knowlton* v. *Fitch*, 52 N. Y. 288 ; *White* v. *Smith*, 54 id. 522.) It is sufficient for the present purpose to say that the broker employed in the transaction, borrows the stock to make delivery on his own account as between himself and the lender, and repeats the process of borrowing so long as the transaction with his customer is open and as the exigency requires. The broker and the customer have mutual and correlative rights and duties. The former undertakes to carry the stock a reasonable time so as to afford the customer an opportunity to realize the expected profits, while the customer on his part is bound to keep his margin good so as to secure the broker against loss. But the customer is entitled to notice before the broker can close him out by buying in the stock on his account.

It is clear that after the death of Rau, the plaintiffs could not enter into fresh transactions in the purchase or sale of stocks on account of Rau or his estate, in execution of unexecuted

orders or a general authority to deal in stocks for his account given before his death. But the rule that the death of a principal revokes the authority of an agent has a well-settled exception when the agency is coupled with an interest. (*Hunt* v. *Rousmanier*, 8 Wheaton, 174.) The death of Rau left the plaintiffs in the position they had previously occupied, of being borrowers of the stocks to deliver, with a personal liability to replace them when called for by the lenders. This obligation was not and could not be terminated by Rau's death. The estate of Rau on the other hand was bound to indemnify the plaintiffs for any loss they might sustain on closing out the transactions, or as the phrase is, " covering the sale."

Until the appointment of a representative of Rau's estate there was no one on whom the plaintiffs could call for additional margin or to close the transactions, and no one to give directions in its behalf. The result of continuing the transactions might be favorable or unfavorable, but which, could not be foreseen. The speculation was Rau's, and while he lived he could control the adventure so long as he performed his duty under the contract. Upon his death this right naturally devolved upon his representatives. What the plaintiffs did was to keep the speculation in *statu quo* awaiting the qualification of the executrix, the only change meanwhile in the situation arising from the fluctuations in the market price of the stocks. As it turned out it would have been to the advantage of the estate if the stocks had been bought in immediately after Rau's death. But if this course had been taken and the market had gone the other way, the plaintiffs would then have been called upon to justify the transaction. We think the plaintiffs were not bound to place themselves in this dilemma, but were authorized, acting in good faith, to maintain the existing situation until a representative of the estate should be appointed. They had such an interest in the transaction by reason of the personal obligation they had assumed, as entitled them to continue it until that time.

The act of buying in the stocks on account of the estate, which the defendant insists should have been done, would have

been a more decisive act of agency, than to borrow stocks to replace others previously borrowed in order to discharge their own obligation.    We do not say that circumstances might not exist which would justify a broker in closing a stock transaction after the death of the principal, without awaiting the appointment of a representative, but however this may be, we think it plain that no exigency existed in the case now under consideration, which imposed any such duty upon the plaintiffs.

There are no other questions calling for special consideration.

We find no error in the judgment, and it should, therefore, be affirmed.

All concur.

Judgment affirmed.