## DENNY, RECEIVER, *v.* SCOONOVER.

[No. 12,544. Filed October 27, 1926. Rehearing denied January 14, 1927. Transfer denied August 27, 1931.]

*Henry M. Dowling* and *Burgess & Gill,* for appellant.

*Emsley W. Johnson, Byron K. Elliott, W. F. Elliott* and *Chester L. Zechiel,* for appellee.

*Richard L. Ewbank, Amicus Curiae.*

Nichols, J.—Suit for an accounting by appellant against appellee who, prior to its insolvency, had been appointed, by written contract, the general agent of the American Bonding and Casualty Company for Indiana, and who served in that capacity from March 6, 1920, to February 26, 1921, when domiciliary receivers for said company were appointed in the State of Iowa. Before the receivers were appointed, appellee, as such agent, acting under said written contract, collected large sums as premiums on bonds and policies issued by said company. To secure an accounting of these funds and to recover the balance due, this suit was brought.

To the complaint a general denial was filed.

A trial by the court resulted in a judgment in favor of appellee. The errors assigned are the court's action in overruling appellant's motion for a new trial, and the conclusions of law. It appears by the special findings that, on March 6, 1920, the American Bonding and Casualty Company and appellee entered into a written contract of agency which, so far as here involved, provided that appellee was authorized to collect premiums for transmission to the company, and to pay return premiums due by the company; that appellee would forward to the company on the fifth day of each month a detailed statement of the business reported by or through the agency during the month preceding; that appellee would pay all moneys due to the company as shown by the monthly statement not later than 60 days after the month to which the account referred; that appellee agreed to accept as full compensation certain commissions on the net premiums received in cash, that is to say, the gross premiums received, less the amount of premiums returned to the assured, whether as refunds or reductions, on all policies of insurance issued through the agency while the agreement was in force, and, in addition thereto, a 10 per cent commission of net profits, and two and one-half per cent on net premiums as a contribution toward office expense.

Appellee entered upon the performance of his duties under said agency contract on or about March 6, 1920, and continued to act as such general agent until February 26, 1921.

The company became insolvent and temporary receivers were appointed for it on January 24, 1921, by the district court of Iowa for Woodbury County, and, on February 20, 1921, a permanent receiver was appointed by said district court in said cause, which receivership is still pending.

Said company was incorporated under the laws of

Iowa, and its home office, at the time of the appointment of said receivers, was at Sioux City, Iowa, and within the territorial jurisdiction of said district court.

On February 26, 1921, said district court made an order and decree that all bonds and policies of insurance theretofore issued by said company were terminated as of that date. Appellee, while purporting to act as agent of the company under said agreement since March 6, 1920, and prior to February 26, 1921, collected from customers as premiums on bonds and policies of insurance executed by him as agent of said company, $39,239.26, and paid to said company in cash $20,161.40, prior to February 26, 1921, exclusive of commissions. The two and one-half per cent on net premiums, when calculated upon the business written by appellee on which net premiums were paid to and received by the company prior to December 31, 1921, amounts to $501.53.

From the date of his contract to February 26, there accrued to appellee commissions aggregating $11,992.42, exclusive of a commission of $3,738.11 which accrued on the premium of the bond for the Carpenter Construction Company of Terre Haute, Indiana, now in litigation between that company and appellee, and also exclusive of a commission of $1,326.66, which accrued on the premium bond of the Central States Construction Company of Michigan, which latter bond was written by appellee for the Chicago Bonding and Insurance Company. Two thousand four hundred and fifty-two dollars and fifty cents on the premium of the bond of the Carpenter Construction Company was paid to appellee on June 5, 1921, that being since the appointment of the domiciliary receiver, but before the appointment of the ancillary receiver in this state, and the same has been retained by appellee, leaving a balance of $1,286 unpaid on his commission on said premium, and, in the

accounting, appellee is entitled to a credit of $1,286 and $1,326 by reason of the two items above mentioned. Appellee is also entitled to a credit of $885 for salary and expenses of a special agent employed by him and the American Bonding and Casualty Company under an agreement between them outside the general-agency agreement, and also entitled to a credit of $566 as a five per cent commission on reinsurance accepted by the company.

Under the laws of Iowa, the company was required to keep an unearned premium reserve fund for the purpose of paying return premiums or of re-insuring and paying the premiums therefor in case the company was unable to carry out its contracts with its policyholders. The domiciliary receiver appointed in the State of Iowa, under express authority of the court appointing him, in the cause in which he was appointed, after his appointment, reinsured accident and health policyholders in another company, and, under express authority of said court, used a part of the funds of the company to pay for such reinsurance. The policy of reinsuring and in returning unearned premiums was recognized and followed in the order of the court of Iowa appointing the domiciliary receiver and in the conduct of the domiciliary receiver in winding up the affairs of the company.

When the permanent receiver was appointed, there were outstanding policies and bonds issued by said company through appellee, its agent, which were terminated by order of court, upon which the total gross unearned premiums amounted to $19,675.32; before the appointment of the domiciliary receiver, appellee, under the written contract dated March 6, 1920, was authorized by the terms of his contract and by custom and practice was obligated to pay and did pay to bondholders and policyholders sums of money as unearned and return premiums, when policies were canceled, and,

after the appointment of the domiciliary receiver and the termination, by order of the court of Iowa, of the bonds and policies, he used the sum of $19,675.32 in paying said policyholders and bondholders the return premiums on policies and bonds so canceled, or in furnishing them with new bonds, etc., in solvent insurance companies to the amount of the unearned and return premiums, by paying for such additional insurance out of his own funds individually and the funds in his hands received by him for the company for premiums and not remitted to said company or to its receivers; that these premiums were refunded in conformity with the order of the court directed to the domiciliary receiver, and hereinafter set out in substance, terminating the policies, bonds and undertakings, and there is nothing due from appellee to appellant on account of any funds he has received or collected from customers or policyholders as premiums on bonds and policies of insurance under his contract of agency, all having either been paid out by him in return premiums or in procuring new bonds and policies, as hereinbefore found, or in part retained by him as commissions. The receiver authorized, consented to, and acquiesced in the action of appellee in adjusting the return premiums, and consented to give appellee credit therefor against the funds in his hands. Appellee paid out the funds in his hands as agent of the corporation before the appointment of the ancillary receiver, the appellant, and before any demand was made for an accounting; that all payments were made after the appointment of the permanent domiciliary receiver in Iowa, and after February 26, 1921.

The court appointing the permanent domiciliary receiver ordered that no liability accrue on any of the policies, contracts or undertakings of the company for losses which might occur after February 26, 1921, and

that said date be fixed as the date from which the return premiums should be computed, which the holders of the policies, bonds, etc., of said corporation were entitled to have returned; that the portion of the said premiums which the said holders were entitled to have returned should be computed and allowed on a *pro rata* basis of the premiums actually paid by such holders of policies, bonds, etc., and the permanent receiver was ordered to administer said insolvent estate in accordance with the above instructions and conclusions.

Remittances under the contract were made by appellee each month, remitting to the company according to his contract all premiums collected from customers on bonds and policies less the commission due him and return premiums paid out by him due by the company for canceled policies. There were no moneys on hand in appellee's possession at the time the court terminated the bonds and policies written by him except such as had been received by him as premiums after the last monthly report and remittance of premiums to the company, which moneys were used by defendant as shown above.

We cannot agree with appellant's contention that no set-off, credit or other defense can be considered unless it is specially pleaded, and the authorities cited by appellant do not sustain its contention. The first, *Simons* v. *Kosciusko Building, etc., Assn.* (1913), 180 Ind. 335, 103 N. E. 2, was a suit to foreclose a building and loan mortgage, and it was held that no credit could be given for overpayments on other loans without proper pleadings. The second, *Rush* v. *Thompson* (1887), 112 Ind. 158, 13 N. E. 665, held that want of mutuality made the set-off invalid. The third, *Brown* v. *College Corner, etc., Road Co.* (1877), 56 Ind. 110, was for the recovery of money paid by mistake, and it was held that it was error to sustain a demurrer to

an answer by way of counterclaim or recoupment for damages for breach of the contract involved, and to sustain a demurrer to an answer of set-off for extra work performed. None of the cases cited was an accounting case. When one party brings another into a court of equity for an accounting, the whole matter is necessarily before the court for inquiry and adjustment, and no pleading of set-off is required. It is apparent that the rights of the parties cannot be determined without considering the state of the account on both sides. The purpose of an action for an accounting is to adjust the accounts of the litigants and to render complete justice. *Vierra* v. *Fontes* (1901), 135 Cal. 126, 66 Pac. 241. In *Consolidated Fruit Jar Co.* v. *Wisner* (1905), 110 App. Div. 99, 97 N. Y. Supp. 52, affirmed in 188 N. Y. 624, 81 N. E. 1162, it was held that no affirmative answer is necessary even to justify a judgment of recovery for the defendant, both, for the reason that in an action for an accounting, each party presents his respective items of credit, and, for the further reason that, when a court of equity assumes jurisdiction, it will grant appropriate relief to the one entitled thereto, in order that complete justice may be done. The fact that appellee tendered pleadings by way of set-off, to which demurrers were sustained, did not preclude him from thereafter making his defense under the general denial. There was really no question of set-off in the case, and the court so treated it. The question to be determined was did appellee owe appellant, and this could only be determined by deducting from the total amount collected by him as agent his proper charges, expenses and commissions.

Whether these charges, which appellant chooses to call "set-offs," were authorized is presented to this court upon five different theories, namely: that they were authorized by appellee's contract

with the company; by usage and custom; by the domiciliary receiver; by the Iowa statute and acts of the receiver; and that appellee was authorized to have and should have credit therefor under the assignment by the policyholders and bondholders whose claims for unearned premiums were paid by and assigned to him. It is apparent that, if the refunds and substitutions were authorized upon any one of these theories, there can be no reversal on this question. It is expressly provided in the contract of agency between appellee and the company that "the agent is authorized to collect premiums for transmission to the company and pay return premiums due by the company." Acting upon this provision of the policy, and in harmony with the custom and usage of insurance business, it appears, both by the evidence and by the court's finding, that appellee obligated himself to pay to bondholders and policyholders unearned premiums in case of the cancellation of such instruments, and that, with the approval of the company, he had been making such refunds. His obligations were personal, and were supported by a sufficient consideration to make him personally liable to make such payments in the event of the failure of the company to pay. Under such circumstances, to say that he must remit all of the premium funds in his hands without protecting himself from incurred liabilities by satisfying the demands of holders of canceled bonds and policies does not seem to be in harmony with principles of equity. It appears that the reserve fund required by the Iowa statute for the payment of unearned premiums appeared only upon the books of the company, and that it had no existence whatever in fact. Appellee would, therefore, have had only resort to general funds as a general creditor of an insolvent corporation as his protection. We are not unmindful of the general rule that the appointment of a receiver terminates an agency,

but such rule is not without its exceptions, and we think that we have such an exception here. Technically speaking, we may not say appellee's power was coupled with an interest, and, therefore, irrevocable, but where the agent, under his appointment, engages in a legitimate course of action with the approval of the company and in harmony with custom, in this case, promising to refund in the event of cancellation of the bond or policy, his agency may not be revoked until he is protected from personal liability growing out of such course. Authorities to this effect are: *Phez Co.* v. *Salem Fruit Union* (1921), 103 Ore. 514, 201 Pac. 222, 25 A. L. R. 1090; *Terwilliger* v. *Ontario, etc., R. Co.* (1896), 149 N. Y. 86, 43 N. E. 432; *Hess* v. *Rau* (1884), 95 N. Y. 359; *Read* v. *Anderson* (1884), 10 Q. B. Div. (Eng.) 100, 13 Q. B. Div. (Eng.) 779, 783; *Avery Co.* v. *Herriott Carithers Co.* (1924), 81 Ind. App. 348, 143 N. E. 305. It stands to reason that he may, in due course, as theretofore, pay back, from the premiums collected, unearned premiums, and thereby protect himself from liability, and we can see no difference in effect between paying back the unearned premium and the substitution of another policy with the same money, if the policyholder or bondholder is satisfied.

It appears by the findings, supported by evidence, that, under the laws of the State of Iowa, the company was required to keep an unearned premium reserve fund for the purpose of paying unearned premiums or reinsuring and paying the premiums therefor. Clearly, the holders of bonds and policies with unearned premiums were preferred creditors as against such fund. The court by its order made provision for the payment of unearned premiums, and ordered the receiver to settle the insolvent estate in accordance with such instructions, and the receiver authorized, consented to and acquiesced in the action of appellee in adjusting

the return premiums, and consented to give appellee credit therefor against funds in his hands. Appellee having made the refunds, whether by payment to the policyholders or bondholders of unearned premiums or by substitution, we hold that appellant, as an ancillary receiver thereafter appointed, cannot compel appellee to further account for moneys so expended. It must be kept in mind that appellant is but an ancillary receiver, and, while it is true that he was appointed by a local court, he was, in fact, acting for the domiciliary receiver, to whom he must account for any funds that come into his hands. As such, he can only maintain his action in behalf of a foreign insolvent estate through the policy of comity existing between the states of Indiana and Iowa. Under such circumstances, the rule that must prevail is thus stated in 23 R. C. L. 144: "Since it is only upon consideration of comity that the courts of one state will recognize and enforce the claims of a receiver appointed in another state, such considerations will not induce the courts to permit a foreign receiver to enforce claims to the injury of citizens of the domestic state, especially when the sole purpose of the receivership is to enable the debtor to hinder, delay and defraud resident creditors. And the fund will be decreed to the domestic creditor, without stopping to inquire into the legality of the appointment of the foreign receiver or as to his rights under the laws of the domestic state. The principle upon which the decisions rest is that it is the policy of every government to retain within its control the property of a foreign debtor until all domestic claims have been satisfied, and hence the right of the receiver of a foreign court to sue, which is allowed only upon consideration of comity, will be denied when it comes in conflict with the interests of domestic creditors, when such interests were fairly acquired. The rule cannot be affected by the appoint-

ment of an ancillary receiver to collect the funds and turn them over to the foreign receiver." Certainly, the bondholders and policyholders to whom there were due unearned premiums might invoke this principle for their protection, and we can see no reason why appellee, having paid his liability, may not do so as well.

Having determined that the judgment must be affirmed on either of the two theories discussed, we do not need to consider the other theories presented. Nor do we need to consider the questions of commissions, salaries and expenses mentioned in the findings, and presented as errors, for the reason that, holding as we do that the items of unearned premiums paid by appellee were correctly allowed, these amounted to enough to more than balance the entire amount of appellant's claim, and there would, therefore, be no available error in allowing any of appellee's claims for commissions, salary or expenses. It is a well-established rule of law that, even though some of the findings are erroneous, this does not constitute reversible error, if such findings are not necessary to the conclusions of law. *McCaslin* v. *Advance Mfg. Co.* (1900), 155 Ind. 298, 58 N. E. 67; *Weaver* v. *Nat. Casualty Co.* (1924), 81 Ind. App. 421, 143 N. E. 608.

We find no reversible error. The death of appellant is suggested of record, and this case is, therefore, affirmed as of the date of submission.