KNIGHT v. ÆTNA LIFE INS. CO. et al.

District Court, E. D. Pennsylvania. October 1, 1929.

No. 14898.

William E. McCall, Jr., of Philadelphia, Pa., for plaintiff.

Joseph W. Henderson, of Philadelphia, Pa., for defendants.

DICKINSON, District Judge. Besides a blanket criticism of the statement of claim in the respect of its failure to serve the purposes of the bill of particulars, which was familiar to the old practitioners, there are two objections raised to the statement of claim. One is that no cause of action is disclosed, and the other is in effect that an action against three defendants jointly has been brought to enforce three claims, one of which is a claim against one of the defendants, another a claim against another of the defendants, and the third against the third defendant, each of which is a separate, independent claim against one of the defendants, and none of which is a claim against all of the defendants jointly.

A very broad outline fact statement will shorten the inquiry into the particular question raised. Each of the defendants is a corporation, and as such authorized to do one branch of the general insurance business, in that the business of one company is to insure lives, that of another to insure against the consequences of accidents and deaths, and another to do what has come to be known as an automobile insurance business. One policy holder often has need of protection in two or more of these several branches of insurance. It is, of course, good business policy for those in the insurance business to be in a position to give to a prospective policy holder every form of policy of which he may stand in need.

Out of this situation has grown a method of reaching this result. The method adopted in many instances is for a strong insurance company in some branches of the business to cause to be organized a number of corporations to cover together the whole field, all of which companies are brought under one control, and managers are obtained, who act for all of them, so that any branch of the insurance business can be taken care of through the same management. All of these companies thus come to have a common manager, a common office, and practically act as a unit.

The plaintiff is a broker. It is his business to get in touch with those in need of any kind of insurance, and these prospective policy holders become what are called the clients of the broker, who come to the broker to have the insurance of which they are in need placed. Having such a customer or client, the broker goes to an insurance company and places with it the insurance, or upon occasion divides the insurance up among several companies. It thus is to the interest of the insurance companies to make business friends of

such brokers, because through them they secure valuable business.

There likewise has grown up what has come to be an established practice of allowing to such brokers compensation for their services, which takes the form of what is called a commission, and which is really a sharing between the insurance company and the broker of the premium which is paid by the insured. Insurance policies are usually limited to a term, and, if continued, are continued through what are called renewals. Premiums are thus paid periodically. This has introduced the custom of paying a broker's commission of a certain percentage of the initial premium paid, and a further allowance out of the premiums paid on all renewals.

■ This plaintiff avers that he thus placed insurance for one of his customers or clients, and thus earned as his compensation the customary commission, which was to be measured by the initial premium paid, and by premiums thereafter paid on renewals. His complaint is that the insurance company, after the insurance had been placed through his efforts as broker, has sought to deprive him of a part of his commissions, by denying him any share in the premiums on renewed policies.

Out of the fact situation as thus outlined we think that a cause of action may properly arise, and the question thus becomes narrowed to whether it is averred in accordance with the established practice. The averment of the statement of claim is in substance that the plaintiff placed insurance in the aggregate sum of $1,000,000, represented by policies issued to one John Williams, following the general practice above outlined. The fact averment is that one Remington, who was the general manager of each and all the different companies, notified the insured that, because of the commission which they were paying to the plaintiff as his broker, the business was unprofitable to the companies, and for this reason they had decided to cancel the policies then in existence, and to refuse to issue renewal policies, unless the insured would dismiss his broker and place his insurance directly with the companies, without the intervention of a broker. The insured was under compulsion to comply with this demand, and his insurance was thereafter continued and renewed by the company, and the compensation which the companies had agreed to pay the broker was thereafter denied. The legal basis for the averment of the promise of compensation is the general well-established practice upon which the defendants and other insurance companies had been conducting business for many years, whereby an implied promise of the insurance company to pay the broker this established and customary commission arose out of the act of the broker in offering the business to the companies and its acceptance by the company. There is thus an averment of an implied promise by the insurance companies to pay the broker a compensation, payment of which it is averred has been refused. Out of this a cause of action arises, which we think is sufficiently averred.

■ The next question is whether the promise thus declared upon is joint, or whether it is the several promise of each of the companies with which the insurance was placed. There is in the statement of claim the averment that the "defendants are affiliated corporations of Hartford, Conn., doing business in Philadelphia," the further averment that the "defendants in the conduct of their business with plaintiff acted as a unit," and a further averment that the "local manager" with whom the insurance was placed was a common agent of all the defendants. We do not find in these averments any averment of a joint promise, either express or implied, of all of these defendants. So far as disclosed by the statement of claim, the fact situation is that the defendants, for the promotion of the business in which each was engaged, employed a manager, who acted for each of them, and the only inference which can be drawn therefrom is that each company promised to pay the broker's commission on the business placed with each company. The inference would not be justified that they all promised to pay the aggregate commissions earned, or that each made itself responsible for the commissions payable by the others. This means that the implied promise averred is not averred to have been a joint promise, which could be enforced in a joint action against all.

■ The final objection raises the question of sufficient particularity in the statement of claim. There is the definite averment that the compensation of the broker is measured by a percentage of the total premiums paid, and that the aggregate of commissions so earned is $10,000. If there were but one insurance company concerned, the statement of claim would come to no more than the averment that the broker had placed insurance with the company represented by policies issued and renewed in the aggregate sum of $1,000,000, the earned broker's commission on which was $10,000. If the claim were made specific, there would be set out the several policies which had been issued and renewed, with the premiums paid thereon, and

the several commissions earned, so that the claim of the plaintiff would be found in the aggregate sum of these commissions. The practical difficulty of presenting such a statement of the plaintiff's claim is intimated and substantially expressed in Paragraph 17 of the statement filed, wherein the court is asked to "require" the defendant companies to account for all the commissions payable to the plaintiff.

It has been often said that in Pennsylvania, where we have no court of equity in the chancery sense, an action in assumpsit is itself a bill in equity. In a measure this is true, in that equitable defenses, which in jurisdictions which have a court in chancery are only there cognizable, may be introduced and considered in Pennsylvania in an action in assumpsit, and is true also in the further sense that the court will, in administering the law, apply the principles of the doctrines of equity. In the procedural sense, however, this is not true, although very much, and indeed nearly all, of what can be done by a chancellor through a direct command to a litigant to do, may be accomplished through legal action, by bringing such a stress upon the litigant as to induce him to do what in equity he ought to do. For illustration, if a plaintiff complains of a nuisance or repeated trespasses which a chancellor would restrain, no court of law would be empowered to issue a restraining order, but in Pennsylvania the plaintiff might bring his action, not for compensation for the injury done him, but to establish his right, accepting a verdict for mere nominal damages; but, if the defendant does not cease from his invasion of the plaintiff's rights, successive actions may be brought, in which punitive damages can be recovered in ever-increasing sums, until the defendant refrains from further injuries to the plaintiff.

There observations suggest that, if plaintiff is in need of injunctive relief, he can obtain it directly only through chancery processes. We dispose of, however, the questions raised and discussed before us by ruling:

1. The ground of demurrer that the statement of claim discloses no cause of action is not sustained.

2. The ground of demurrer that the statement of claim does not in legal effect aver a joint promise, express or implied, by the defendants, is sustained.

3. The exceptions to the statement of claim voiced in the third ground of demurrer, that the statement of claim is not sufficiently specific in respect to how the claim is made up is not sustained.

A word in amplification of this third conclusion may be justified. The system of practice which prevailed in Pennsylvania before the acts of assembly regulating the practice were passed warranted a plaintiff in filing a declaration or narr. which was couched in very general terms and did no more than set forth a cause of action. In fact, the practice was to take a printed form of what was known as a declaration in the common counts, in which there were blanks for the insertion of the names of the parties, the date applicable to the particular case, and the sum of the damages sought to be recovered. There was no information given to a defendant, and he might learn at the trial that the suit against him was based upon a book account for goods sold and delivered, a promissory note or other obligation in writing to pay money, or upon an express promise, oral or written, or upon an implied promise, growing out of transactions had between the parties. Out of this grew the practice of the defendant asking for the allowance of a rule upon the plaintiff to file a bill of particulars, and in obedience to this rule, if it was made absolute, the plaintiff was required to set forth the particulars of his claim, and was not permitted to proceed with his action until he had so done.

A statement of claim under the Practice Act of 1915 (Pa. St. 1920, § 17181 et seq.) answers to the purposes both of a declaration and a bill of particulars under the old practice. If a bill of particulars were called for in the present case, the plaintiff would doubtless respond to the demand by an averment that the particulars of the plaintiff's claim were in the keeping of the defendant itself. In such a situation the plaintiff would not be called upon to supply the defendant with the information which it had and was keeping to itself.

An appropriate order in conformity with this opinion and with the provisions of the Practice Act of 1915 may be submitted.