Patricia Klim, a minor, by Emily Klim, her mother and next friend, and Emily Klim, Plaintiffs-Appellants, v. Howard Johnson, Defendant-Appellee, Allstate Insurance Company, Third Party-Defendant-Appellee.

Gen. No. 47,136.

First District, Second Division.

March 11, 1958.

Released for publication April 10, 1958.

Charles M. O'Brien, of Chicago (John J. Connelly, of counsel) for plaintiffs-appellants.

Hinshaw, Culbertson, Moelmann & Hoban, of Chicago (Oswell G. Treadway, of counsel) for Allstate Insurance Company, defendant-appellee.

JUSTICE MURPHY delivered the opinion of the court.

Plaintiffs obtained a judgment in a personal injury action against defendant Johnson. A supplementary citation proceeding to collect the judgment against Johnson, under the provisions of section 73 of the Illinois Civil Practice Act and Rule 24 of the Supreme Court Rules [Ill. Rev. Stat. 1957, ch. 110, §§ 73, 101.-24], subsequently was instituted by plaintiffs against

the third party defendant, Allstate Insurance Company, based on a contract of liability insurance covering the automobile operated by defendant Johnson. A hearing on the citation proceedings resulted in a finding by the trial court that the policy of insurance in question was null and void from its inception, and that Allstate did not have in its possession or control any money, choses in action, property or effects belonging to defendant Johnson. Plaintiffs have appealed.

Johnson applied for an insurance policy from Allstate, covering his automobile, on December 18, 1950. The agent of the insurance company prepared a written application by asking questions of Johnson and recording the answers on the application in his own handwriting. After the application was completed it was signed by Johnson. To the question: "Has any insurer ever cancelled any automobile insurance issued or refused any automobile insurance to the applicant or to any of his household?", the answer recorded is "No." On the reverse side of the application, not signed by Johnson, appears the following questions and answers:

Q. "Has applicant or any driver ever had any accident or losses?"
A. "No."
Q. "Has applicant been previously insured with another company?"
A. "No."

Johnson testified that at the time he completed the application he had with him and showed to the insurance clerk a policy of automobile insurance issued by the Industrial Insurance Company and a letter which he received from that company, which is entitled "Notice of Cancellation," and it in substance states:

"We hereby cancel the policy . . . issued to you by us . . . and give you notice of such cancellation, as provided by the terms of said policy."

486

The effective date of cancellation was December 22, 1950.

The agent of Allstate, who took the Johnson application, denied Johnson submitted any other policy with notice of cancellation of that policy at the time he applied for Allstate insurance.

The Allstate policy was not produced by Johnson, but the policy period was effective from December 19, 1950, to December 19, 1951. A similar policy was issued for the period from December 19, 1951, to December 19, 1952, and in December, 1952, a third policy was issued. The last two policies were issued without any additional written application.

The 1950 and 1951 policies each contained a supplemental page headed "Declarations." No. 14 of the 1950 policy was:

"During the past two years no insurer has cancelled any automobile insurance issued, or refused any automobile insurance, to the named insured or to any of his household."

No. 7 of the 1951 policy was:

"During the past two years, with respect to the named insured or to any member of his household, no insurer has cancelled or refused any automobile insurance nor has any license or permit to drive an automobile been suspended, revoked or refused."

The 1951 policy contains Conditions which apply to all coverages and includes:

"1. . . . By acceptance of this policy the named insured agrees that the Declarations on the Supplement Page are his agreements and representations, and that this policy embodies all agreements relating to this insurance, existing between himself and Allstate or any of its agents.

"3. . . . The terms of this policy may not be waived or changed by notice to or knowledge possessed

487

by any agent or other person, but only by policy endorsement. . . ."

When questioned about the 1950 policy, Johnson stated he did not have the "original policy," to which the supplemental page "Declarations" was attached, but it was the "same sort of policy" as in evidence. We assume, therefore, that the original policy issued in 1950 also contained the foregoing conditions.

On September 22, 1952, Johnson, while driving the automobile described in said policies, was involved in an accident in which plaintiffs were injured. They obtained judgments against him on February 2, 1956, in the sums of $1,000 and $5,000 respectively. On the day of the accident Johnson reported it to Allstate. On September 30, 1952, he gave Allstate's investigator a written statement, in which he says:

"My prior insurance was placed through the dealer from whom I purchased my previous car . . . . They cancelled my insurance after I had an accident—then I came to Allstate."

The investigator testified that at the time he received the statement from Johnson on September 30, 1952, Johnson did not recall the name of the prior insurance carrier; that after considerable difficulty Allstate learned that the Industrial Insurance Company of New York was the prior carrier, and on inquiry ascertained Industrial Insurance had cancelled its policy with Johnson for loss frequency; that Johnson was again interrogated on January 13, 1953, and "the net result was that the insured admitted that he never told our representative prior to coming to Allstate, that he had a prior cancellation." On February 5, 1953, Allstate cancelled Johnson's policy "ab initio" and refunded all the premiums received from him.

Plaintiffs contend (a) that the trial court erred as a matter of fact and in law in holding that defendant Johnson made misrepresentations, which entitled de-

488

fendant Allstate to avoid his policy of insurance; (b) that Johnson made no misrepresentations as to prior accidents, and (c) that Allstate, by its conduct following the accident of September 22, 1952, waived its right to raise the defense of misrepresentations.

Both sides have proceeded on the theory that the Allstate insurance coverage was a continuous policy from December 19, 1950, to February 5, 1953, the date of its cancellation letter to Johnson.

Plaintiffs rely upon Phenix Ins. Co. v. Hart, 149 Ill. 513; Abrahamson v. Hartford Fire Ins. Co., 181 Ill. App. 254; Phenix Ins. Co. v. Stocks, 149 Ill. 319; Home Ins. Co. v. Mendenhall, 164 Ill. 458; Germania Life Ins. Co. v. Koehler, 168 Ill. 293. The court, in Phenix v. Hart, held that where the assured is without fault, notice to the insurer's agent at the time of the application, of material facts, is notice to the insurer, preventing a forfeiture. The Hart case was followed in Abrahamson v. Hartford Fire Ins. Co., an automobile case, where there was no issue of misrepresentation. In Phenix Ins. Co. v. Stocks, a fire insurance case, the insured made a full disclosure, but the agent used his own words in the application, and there was no question of the insured's good faith. Again, in Home Ins. Co. v. Mendenhall, the assured made a full disclosure to the agent. Also, in Germania Life Ins. Co. v. Koehler, a life insurance case, there was a full disclosure to the agent. There was no question of insured's good faith. The court held knowledge of the agent was knowledge of the insurer, and receipt of premiums thereafter waived the right of forfeiture.

These cases are not applicable because there were no questions in them of failure of full disclosure or insured's good faith. In the instant case, the trial court found that Johnson made false answers in his application of December 18, 1950.

Plaintiffs argue and cite cases in support of the position that Johnson made a correct answer when he answered "No" to the question of prior insurance cancellation, and that the court therefore erred, as a matter of law, in finding Johnson had made false representations. The cases cited by plaintiffs set forth a number of dictionary definitions of the word "cancel." The court finds these literal definitions do not apply here.

The courts of this state have construed insurance policies as "cancelled" and the act of the insurance company to be a "cancellation," when the insurance company sends a written notice, in which it positively and affirmatively indicates to the insured that it is the intention of the company that the policy shall cease to be binding as such upon the expiration of a stipulated number of days from the time when this intention is made known to the insured. Burnett v. Illinois Agricultural Mut. Ins. Co., 318 Ill. App. 629; Stryzewski v. American Motorists Ins. Co., 286 Ill. App. 613 (Abst.); Colonial Assur. Co. v. National Fire Ins. Co., 110 Ill. App. 471.

The notice of cancellation received by Johnson from the Industrial Insurance Company positively and affirmatively terminated its policy with him, and he so understood that notice when he sought a new policy from Allstate on December 18, 1950. In addition to the Industrial Insurance Company notice, Johnson received a letter from the Standard State Bank, which had financed his purchase of the automobile, dated December 14, 1950, informing him that it had received notice from Industrial that the policy had been "cancelled" and requesting Johnson to obtain "from a reliable insurance company a new policy showing this Bank as 'Lienholder.' "

Johnson testified that he recalled being asked the question, "Has any insurer ever cancelled any automo-

490

bile insurance issued or refused any automobile insurance to the applicant or to any of his household?" and his answer was, "I said none up to this moment." He had attended college for two years and said he understood fully the import of the things he signed and "imagined" that he had read the Allstate application for insurance before he signed it. The trial court reasonably could have decided his answer, "none up to this moment," indicated that he did not submit his Industrial policy and cancellation letter to defendant's agent. He testified only that he did not remember being asked about prior accidents. He did not deny admitting to defendant's investigator on January 13, 1953, that he did not disclose the prior cancellation at the time of the application.

Representations made by an applicant for automobile insurance, as to prior cancellation and frequency of accidents, are matters which materially affect the risk insured against. Allstate was entitled to that information to determine if it was willing to assume the defendant as a risk. The evidence establishes that Johnson made material misrepresentations, both as to prior cancellations and as to accident experience. The trial court had sufficient evidence before it to find that Johnson made material misrepresentations at the time of application for insurance.

We see no merit in plaintiffs' contention that the court erred, as a matter of law, in deciding that Johnson made misrepresentations sufficient to justify the cancellation of his policy. Cases cited by them, involving ambiguities and announcing the rule that in such situations construction will favor the insured, are not applicable. There is no ambiguity in the instant policy, and the cases cited do not require an interpretation preventing cancellation.

Primarily, this case is a question of good faith of the insured in answering the application question re-

garding prior cancellations, which was followed by the policy accepted by him, containing a *declaration* negating prior cancellations. The trial court could have found it difficult to believe that Johnson misunderstood the meaning of "cancel" or "cancellation," as used in the notice sent him by Industrial or by the letter of the Standard State Bank, notifying him to replace the "cancelled" policy.

When the policy issued, it embodied the contract and gave notice that its terms could not be waived or changed by an agent. The law cannot be that at the very moment the policy was delivered, the declaration as to "no prior policy cancellations within two years" was waived and meaningless, and that the declaration negating the same did not mean what it said. If that were the law, it would be possible by parol evidence to destroy many documents, lucid in form and with no question of construction involved. The policy in suit, with the "Declarations" attached, is a document complete in itself, and the plaintiffs cannot successfully contend that Johnson took it, presumably read it, and yet, as a matter of law, is not bound by the "Declarations" and "Conditions" set forth therein. This court has consistently supported this doctrine. Dragosvich v. Allstate Ins. Co., 2 Ill.App.2d 50 (1954); McMahon v. Continental Assur. Co., 308 Ill. App. 27 (1940).

Plaintiffs contend that defendant Allstate waived its right to raise the defense of misrepresentation (1) because it delayed from September 30, 1952, until February 5, 1953, some four and one-half months later, before notifying the insured that "his policy of insurance was being cancelled ab initio"; also (2) that Allstate "renewed his policy of insurance on December 19, 1952."

In the instant case, Allstate claims the first knowledge it had of any prior cancellations was September 30, 1952, and that it was not until about February 5,

492

1953, that it had affirmative knowledge as to the facts of the prior cancellations.

■ The evidence shows that the delay was due largely to Johnson's failure to give Allstate the name of his prior insurer, which information he had in his possession continuously since before his application for an Allstate policy. Allstate indicated its good faith by investigating the prior cancellation before it took action to cancel its policy. It would be unfair to penalize Allstate for its endeavor to ascertain the facts concerning the information it received on September 30, 1952, and hold that the time necessary for its investigation amounted to a waiver by Allstate of its right to cancel the Johnson policy.

■ ■ It is a fundamental rule of law that waiver must be predicated on knowledge of an existing right and an intention to relinquish it and must be proven by clear, precise and unequivocal evidence. Acme Feeds, Inc. v. Daniel, 312 Ill. App. 330; Coal Belt Elec. R. Co. v. Peabody Coal Co., 230 Ill. 164. The acceptance by Allstate of the third annual premium in December, 1952, did not amount to a voluntary and intentional relinquishment or abandonment of a known existing right.

Plaintiffs rely upon section 154 of the Insurance Code (Ill. Rev. Stat., 1957, Ch. 73, par. 766) and have cited several cases to support the point that, since the written application of Johnson was not attached to or endorsed upon the policy and made a part thereof, the application was not made a part of the policy placed in the hands of the insured, and therefore Allstate could not avail itself of the misrepresentations by Johnson. The insurance policy in the hands of Johnson contained the *declaration* regarding no prior cancellations. The point raised has no application to the instant case.

493

We conclude that the Trial Court was correct on the evidence and on the law in its finding that Allstate had the right to declare the Johnson automobile insurance contract null and void *ab initio,* and the judgment of the Trial Court is affirmed.

Affirmed.

KILEY, P. J. and LEWE, J., concur.