BUSHNELL, RECEIVER ETC. *v.* KRAFFT ET AL.

[No. 19,587. Filed June 19, 1962.]

*Bredell, Cooper & Martin,* and *Richard P. Nahrwold,* both of Indianapolis, for appellant.

*Gilliom, Armstrong & Gilliom,* and *Elbert R. Gilliom,* of Indianapolis, for appellee.

KELLEY, C. J.—This is an action brought by appellant receiver against appellees for recovery of alleged "unearned commissions" on certain policies of automobile casualty insurance sold during the period July 27, 1953, to and including September 15, 1955, by the appellees d/b/a Sunny Insurance Agency as agents for and on behalf of Trans-Pacific Insurance Company. Appellant G. A. Bushnell is Receiver of Trans-Pacific Insurance Company and was appointed as such pursuant to the laws of the State of Arizona on September 15, 1955.

Appellant claims recovery of such unearned commissions pursuant to the terms of an "Agreement With Agent" entered into by and between Trans-Pacific Insurance Company and appellees d/b/a Sunny Insurance Agency on July 27, 1953.

Under Article V. of the "Agreement With Agent" the agent was to collect the premiums from the policyholders, deduct his commission and remit the net amount to the Company.

When the appellant went into receivership all outstanding policies were voided by the receiver.

This action was for recovery of that portion of the commissions which were assessed by this appellant as being accruable after the date of cancellation. The trial court entered judgment for the Sunny Insurance Agency. Appellant's only assignment of error is that the decision of the court is contrary to law.

The agreed statement of facts submitted by the parties to this cause revealed the following:

On July 27, 1953, Trans-Pacific Insurance Company (hereinafter referred to as Company) entered into an agreement with the defendants who were doing business under the name of Sunny Insurance Agency (hereinafter referred to as Agency). During the period of the agreement the Company rendered to the Agency, after the close of every calendar month, an "Agent's Account Current", setting forth the charges and credits to the open account between the company and the agency during the preceding calendar month and stating the debit or credit balance. The practice of the parties in accounting for transactions between them was recorded on said Account Current.

When a new policy of insurance was placed in effect and the Company was so notified by the Agency, the Company recorded on the account current the policy number, surname of the policyholder, effective date, expiration date, gross premium charged by the Agency to the policyholder and the Agency's commission thereon. The "Agent's Account Current" was at that time debited with the difference between the gross premium and the full commission. When any policy of insurance was cancelled or terminated prior to its expiration, the Company entered upon said Account Current following the policy number and sur-

name of the policyholder, the amount of the gross return premium payable to the policyholder and the amount of the defendant's commission on said return premium, commonly called "Unearned Commission", and the "Agent's Account Current" was at that time credited with the difference between the gross return premium and the unearned commission.

Under the procedure set forth hereinabove, the "Agent's Account Current" was not charged by the Company with the amount of the commissions earned by the Agency upon gross premiums, and the Agency did not remit such gross premiums to the Company. The Company did not credit the "Agent's Account Current" with the unearned commissions, and did not remit unearned commissions to the Agency. Upon cancellation or termination of any policy before its expiration, the Agency refunded to the policyholder the net return premium with which the Company credited the "Agent's Account Current", plus the "Unearned Commissions" thereon. The Company, in this particular case, made no refunds direct to the policyholders of the return premiums on "Unearned Commissions".

On September 15, 1955 the Company was placed in receivership and all policies underwritten by the Company were cancelled including those written by the Agency, by action of the Receiver effective at midnight on September 15, 1955, at which time the order of liquidation was entered pursuant to Arizona law.

The unearned commissions on the policies written by the Agency which were cancelled by the Receiver amounted to $548.97. The Agency had a credit in the amount of $81.72 due from the Company, which amount was duly set-off.

Subsequent to the cancellation of the aforesaid policies of insurance, the "Unearned Commissions" referred to above in the total amount of $548.97 were credited by the Agency to the respective accounts of the policyholders and were applied by the Agency to the purchase from other insurance companies of replacement policies of liability insurance for such policyholders. The Agency did not communicate with, or obtain approval of, the Company before making such credits and applications of said "Unearned Premiums".

None of the policies involved were policies of insurance required by the Division of Financial Responsibility of the State of Indiana.

The relationship of agent and insurance company cannot depend solely upon general agency principles because these relationships have their own peculiar rights and obligations. *Insurance, Inc.* v. *Furneaux* (1957), 62 N. M. 249, 308 P. 2d 577.

As a general rule, once a valid contract of insurance has been effectuated, the right of either party to cancel it at pleasure can accrue in only three ways: by a concurrent agreement, by a reservation in the policy, by statute. If the right to cancel is reserved it can only be exercised by compliance with the contractual arrangements pertinent thereto or by a mutual agreement to cancel and waiving the contractual restrictions. 32 C. J. (Insurance), §424. Ordinarily tender of the unearned premium is a condition precedent to cancellation of the policy by the Company. If the policy provides that it may be cancelled on notice to insured and on refunding the unearned premium, a return or tender of the full pro rata unearned premium is a condition precedent

to cancellation. 32 C. J. (Insurance), §§440, 441, pp. 1252, 1253.

Under the sixth paragraph of plaintiff's complaint it is alleged that "as a part of the receivership and liquidation of Trans-Pacific Insurance Company, all policies of insurance underwritten by the Company were cancelled effective at midnight on September 15, 1955; that such cancellations were made pursuant to §20-635, Arizona Revised Statutes, which Section states:

> "The rights and liabilities of the insurer and of its creditors, policyholders, stockholders, members, subscribers and all other persons interested in its estate shall unless otherwise directed by the court, be fixed as of the date on which the order directing the liquidation of the insurer is filed in the office of the clerk of the court which made the order, subject to the provisions of this article with respect to the rights of claimants holding contingent claims."

It was further alleged that commissions on unearned premiums collected by defendant as of that date amounted to $467.25, and recovery of this amount was sought on the theory that said unearned commissions were refundable and payable to this plaintiff under the contractual provision which reads as follows:

> "The Agent shall pay the Company a return commission at the same rate on any return premiums, including return premiums on cancellation orders or made by the company.
> "All money paid by the policyholders to the Agent, or to anyone representing him, shall be held by and chargeable to the Agent as a *fiduciary trust* for and on behalf of the Company, and shall be paid over to the Company as hereinafter provided. In the event it is necessary for the Company to cancel this agreement for violation

"of its terms of remittance by the Agent, the Agent relinquishes all right of claim to subsequent renewals, additional premiums, or commissions thereon, insofar as they may be necessary to satisfy the interest of the Company. The Company reserves the right to demand of the Agent a bond of such amount as may be determined with good and sufficient surety to cover the obligations and duties of the Agent under this Agreement."

We reach now the question as to "the interest of the Company" and the "duties of the Agent" under the contract, as contemplated by the parties, with respect to the Agent's duty to "pay the Company a return commission" on policies "cancelled."

It seems clear that by the contract the Company sought through the agent to stimulate its sales and thereby increase the Company's insurance business. It is also evident that the Agent, under the terms of the contract, expected the acquisition of commissions earned through the sale of insurance. However, both parties under the contract recognized that situations would develop in their daily business which would necessitate the cancellation of insurance policies and the return to the cancelled policyholder of unearned premiums. To meet such eventuality, the parties agreed that the Company would give back the net unearned premium and the Agent would tender his unearned commission to the policyholder. It is not logical to assume that the parties at the time the contract of agency was finalized intended that by the term "cancelled" any cancellations other than those made in the ordinary course of business were to be included. *Bothwell* v. *Employers Underwriters Agency* (1924), 145 Md. 36, 125 Atl. 504. The contract does not lead to the conclusion that the parties intended to include cancellation resulting from unusual circumstances

such as the insolvency of the Company or the operation of law which did not result from the fraud of the Agent, the action of the insured or the undesirability of the risk. *Bothwell* v. *Employers Underwriters Agency* (1924), 145 Md. 36, 125 Atl. 504, 509, 511-512.

Ordinarily the insolvency of the insurance company results in a material breach of contract on its part and the claims of policyholders become debts in presenti. An insurance company is not in position to recover premiums due for future coverage after it has been placed in receivership. Nor is it in position to recover commissions in the hands of an agent, the consideration for which has failed. The insolvency of the Company, effectuating a material breach as to existing policyholders, entitles said policyholders to recover the premiums paid but not yet earned. Further, the insolvent Company is devoid of a right to legally secure the commissions retained by an insurance agent on policies voided by reason of the Company's insolvency, since this would enable the Company to profit by its own default. *Hay* v. *Union Fire Ins. Co.* (1914), 167 N. C. 82, 83 S. E. 242; *Insurance Com.* v. *Peoples Fire Ins. Co.* (1894), 68 N. H. 51, 44 Atl. 82; *Garfield* v. *Rutland Ins. Co.* (1897), 69 Vt. 549, 38 Atl. 235; *Am. Steam Boiler Ins. Co.* v. *Anderson* (1889), 6 N. Y. Supp. 507. Accordingly, it is held that where policies written under the agency agreement are "cancelled" by the principal-insurer in bad faith or out of the regular course of business, the agent is not obligated to the insurer for commissions upon unearned premiums. *Schlesinger* v. *Star Ins. Co.* (1931), 100 Pa. Super. 584, 587; *Knight* v. *Aetna L. Ins. Co.* 34 F. 2d 805 (E. D. Pa. 1929); *W. R. O'Brien, Inc.* v. *Vehicle Underwriting Agency*

*Corp.* (1934), 12 N. J. Misc. 815, 175 Atl. 256. It is generally recognized that the insolvency or liquidation of a contract insurer constitutes a breach of its promise to insure, (where the contract is not ratified by the receiver) thus releasing the insured from further performance of his executory promises which are conditional upon the promise thus breached. *Home Ins Co.* v. *Daubenspeck* (1888), 115 Ind. 306, 17 N. E. 601; *Pennsylvania Exch. Bank* v. *United States,* 170 F. Supp. 629 (Ct. Cl. 1959); *Bliss* v. *California Coop. Producers* (1946), 30 Cal. 2d 240, 181 P. 2d 369; *Rosnick* v. *Aetna Sheet Met. Works, Inc.* (1959), 146 Conn. 565, 153 A. 2d 435.

The provisions in the agency contract requiring the appellee to return pro rata unearned commissions on cancelled policies of insurance must be interpreted in the light of its purposes and its connection with the related business transactions. In this connection it is to be observed that the appellees occupied a dual position. The agreement did not make the appellees the alter ego of the Company. Had appellees been merely agents, in the restricted sense, of the Company, whatever insurance business the Agency developed would have been owned by the Company, the Company would have paid the Agency's operating expenses, and the Agency would have been liable to the Company only for insurance premiums actually collected by it from the policyholders.

On the contrary, however, the agreement at the very outset, in Article I, said that "both parties to this agreement expressly recognized the independent ownership by the Agent of the insurance business covered by this agreement" and that "All expenses in connection with expenses of the agent including rent, office up-keep and traveling

expense shall be paid by the agent and not by the company." Moreover, the Agency was required to pay to the Company "all premiums accruing on insurance written under this agreement, whether or not collected by the Agent from the assured." It thus appears very clearly from the terms of the agreement that the Agency had the status of independent contractors, conducting for their own account the insurance business which they owned in their own right.

It further appears that in actual practice the Company looked solely to the Agency for payment of premiums and conducted business with them on open account. Premiums collected were not segregated from the Agency's general funds. Such circumstances clearly reflect that the Agency acted as a general debtor and not as a fiduciary. *Horton* v. *Eagle Indemnity Insurance Co.* (1934), 86 N. H. 472, 171 Atl. 322, 324.

Under the terms and conditions of the "Agreement with Agent", as outlined above, the appellees acted in two capacities: (1) as an independent contractor, owning and operating an insurance business; and (2) as agent of the Company for limited purposes of soliciting business on behalf of the Company, to bind the Company for insurance of certain types and limits, and to collect premiums from policyholders.

As stated above, cancellation ordinarily must be made in accordance with the terms of the insurance policy. *Talge Mahogany Co.* v. *Burrows* (1924), 82 Ind. App. 253, 257, 143 N. E. 692; *The Aetna Insurance Company* v. *Weissinger, Administrator* (1883), 91 Ind. 297, 299; *Schock* v. *Penn. Tp. Mut. Fire Ins. Assn. of Lancaster County* (1942), 148 Pa. Super. 81, 24 A. 2d 738, 740; *Klim* v. *Johnson* (1958), 16 Ill. App. 2d 484, 148 N. E. 2d 828, 831;

*Rothman* v. *National Mut. Ins. Co. of District of Columbia, Md.* (1951), 197 Md. 173, 78 A. 2d 468, 471. Where a cancellation results from a breach of contract with the insured, the agent, as a natural consequence, has an important stake if the cancellation can result in ill will and loss to his business. Where the cancellation is wrongful and particularly where the unearned premium is not refunded in full, the good will of the agency may be seriously affected as may also its property right in the continued business of its customer. *Alliance Ins. Co.* v. *City Realty Co.,* 52 F. 2d 271 (MD Ga. 1931), (recognizing that an agent has a property right in "expirations") ; *Cottingham* v. *Engler,* 178 S. W. 2d 148 (Tex. Civ. App. 1944) ; *Kerr & Elliott* v. *Green Mt. Mut. Fire Ins. Co.* (1941), 111 Vt. 502, 18 A. 2d 164. It is evident from the record that these factors were given effect in the practice of the parties, with respect to return of the unearned net premium and commission by the Agent to the cancelled policyholder, in the day to day conduct of their business affairs. Consequently, it is apparent that the money held by the agent was held for the use of the party entitled to it. The money held by appellees was used to replace the insurance voided by the unilateral breach of the appellant and for the benefit of the policyholders. Such application, therefore, was unquestionably proper, since the policyholders were entitled to the refund.

As we have stated, the appellant could not, of course, recover premiums for that portion of the term of insurance accruing after the insolvency and cancellation had taken place. Nor is it authorized to compel appellees to again account to it for the unearned commissions expended by the former for the protection of the policyholders to

whom such unearned commissions were due. *Denny, Receiver* v. *Scoonover* (1931), 93 Ind. App. 118, 128, 153 N. E. 779; *New York Title & Mortgage Co.* v. *Irving Trust Co.* (1935), 268 N. Y. 547, 198 N. E. 397, 44 C. J. S. Insurance, §134(G), p. 758. To hold otherwise would ignore the proprietary interests of the appellee agent, have the effect of compelling the policyholders to pay for insurance they did not receive, and allow the defaulting insurance company represented by the appellant to reap benefits from its own wrong against the domestic claimants.

The judgment is affirmed.

Bierly, Gonas and Pfaff, JJ., concur.

NOTE.—Reported in 183 N. E. 2d 340.