Bohumir Kryl, Appellee, v. Edward A. Pierce et al., Trading as E. A. Pierce and Company, Appellants.

Gen. No. 38,999.

Opinion filed February 9, 1937. Rehearing denied February 23, 1937.

LEVINSON, BECKER, PEEBLES & SWIREN, of Chicago, for appellants; BENJAMIN V. BECKER and DON M. PEEBLES, of counsel.

MOSES, KENNEDY, STEIN & BACHRACH, of Chicago, for appellee; WALTER BACHRACH and J. H. OPPENHEIM, of Chicago, of counsel.

MR. JUSTICE FRIEND delivered the opinion of the court.

Bohumir Kryl brought an action at law against the brokerage firm of Edward A. Pierce & Co. to recover damages arising from the failure to sell certain securities held in his account. The cause was tried by a jury, resulting in a verdict and judgment in favor of plaintiff for $37,431.90, from which defendants appeal.

The facts, so far as they are material to the issues involved, disclose that plaintiff maintained a brokerage account with members of the firm transacting business under the name of E. A. Pierce & Co., Chicago. The securities in the account were held subject to the ordinary contractual relation between brokers and their clients. The debit balance in the account on or about July 1, 1933, was in excess of $60,000, and the securities had a market value of over $100,000. Kryl was indebted to the receiver of the Kaspar American State Bank. Shortly before July 1, 1933, the receiver took a judgment by confession for $15,631.72 against Kryl and his wife, Mary, based upon a promissory note which had been executed by them, payable to the bank. Execution issued and was returned by the sheriff, "No property found." Thereafter an affidavit for garnishment summons was filed and summons issued for service against E. A. Pierce & Co. When summons was served on July 7, 1933, Thomas Making, manager of the Burnham Building office of E. A. Pierce & Co., notified Kryl thereof, and advised him that no further

trading would be permitted in his account until the issue raised by the garnishment summons had been determined. No trades were made in the account between July 7, 1933, and July 20, 1933. It appears from the evidence that there was a sharp break in stock market prices generally, beginning July 19, 1933, as a result of which E. A. Pierce & Co., pursuant to the agreement of the parties as evidenced by the margin card, sold certain of the securities held in Kryl's account to protect his indebtedness to them.

Before these securities were sold, E. A. Pierce & Co., through its counsel, filed an answer in the garnishment proceeding, listing the securities held by them in Kryl's account and also setting forth the amount of his debit balance. After the securities were sold a supplemental answer was filed, disclosing the sales made, the prices received for the various items sold, and the balance remaining in the hands of the brokers. After the garnishment proceeding was heard in the superior court an order was entered approving the acts of the defendants and directing them to pay the balance remaining in the account, amounting to $6,550.03, to the clerk of the court to be turned over to the plaintiff in the garnishment proceeding, and this payment was made.

It is first urged as ground for reversal that the verdict of the jury is not supported by the greater weight of the evidence. The only controverted issue of fact relates to the actions of the parties between the 7th of July, 1933, when garnishment summons was served, and the 19th of July, when the securities in plaintiff's account were sold. Plaintiff contended that on frequent occasions he requested that all the securities in the account be sold; that the amount due the Kaspar American State Bank be paid, and the balance remaining, being the difference between the selling price of all the securities less the judgment, and also less the debit balance owing Edward A. Pierce & Co., be paid

over to him. Defendants deny that plaintiff had ever requested the sale of his entire account and a payment of the judgment.

Three witnesses testified on behalf of plaintiff, Bohumir Kryl, his wife, Mary, and Edward A. Slott. Kryl testified in substance that he was advised of the garnishment July 7; that July 8 he requested Thomas Making, branch manager of E. A. Pierce & Co., to sell 240 shares of American Commercial Alcohol, 400 shares of Chrysler, and 300 shares of Westinghouse, the proceeds of which would have been more than sufficient to take care of the judgment; that Making, after consulting with the main office of E. A. Pierce & Co., informed Kryl that they could not comply with his instructions, suggesting at the time that Kryl wait until the following day so that Making could "see what can be done"; that July 9 Making again informed plaintiff that they would not sell the shares of stock mentioned, and Kryl then asked him to sell the entire account and take care of the judgment so that he could trade with the balance of his equity. Making again called the main office, and after a telephone conversation advised Kryl that absolutely no stocks could be sold until August 2, when the garnishment proceeding was to come on for hearing in court. Kryl stated that he was in the branch office of E. A. Pierce & Co. every day thereafter, up to and including July 19, and made repeated requests upon Making to sell the entire account and take care of the judgment, and that at the opening of the market on July 19 he again ordered E. A. Pierce & Co. to sell the entire account, stating to Making that "if you do not sell so that I save some money, you will ruin me"; that notwithstanding the repeated statements of the brokers that they could not sell any stocks in the account before August 2, when the market began to break July 20 and 22, they sold Kryl's account without any order of court.

Evidence was introduced to show that the market was fairly steady between July 7 and 19, and that if Kryl's orders had been carried out and a sale made there would have been sufficient funds to satisfy the judgment in full, with a balance over to Kryl of $24,512, free and clear of all claims of E. A. Pierce & Co. and of Kryl's judgment creditor, whereas by refusing to sell, Kryl's entire equity was wiped out with the exception of $6,550.03, which was turned over to the clerk of the court for his benefit and when applied to the judgment of Kaspar American State Bank left him still owing $9,081 on the balance of the bank's judgment.

Mary Kryl testified that she knew Mr. Making of E. A. Pierce & Co.; that she accompanied her husband to the broker's office almost every day during the month of July, 1933, and overheard a conversation between Kryl and Making on July 19, wherein Kryl requested Making to sell the entire account so that he could pay the judgment and open a new account, but that Making said his office would not allow him to do so. She also stated that she heard similar conversations on numerous occasions subsequent to the service of the garnishment summons.

Dr. Slott was offered as a disinterested witness to corroborate the testimony of plaintiff and his wife, and testified that he also was present in the office of E. A. Pierce & Co., practically every day during the month of July, 1933; that he saw Kryl there and heard him request Making to sell out the stocks in his account, but that Making said he could not possibly do so without an order from the main office; that Kryl became upset when the market was breaking July 20 and thereafter, and told Making that the refusal of the brokers to sell his account had resulted in his ruin, and that Making had better sell the stocks so that he could save some of his equity, and that Making replied, "that is not up to me."

It is apparent from the testimony of Winthrop Smith, one of the resident partners of E. A. Pierce & Co., that he had consulted with attorneys shortly after the garnishment summons was served, as to the legality of selling out Kryl's entire account and retaining sufficient funds to satisfy the judgment. If Kryl had not requested that this be done, it is difficult to understand why they should have sought advice on the subject. Making was the only witness produced by defendants to contradict the statements of Kryl, his wife and Dr. Slott. The jury evidently accepted plaintiff's version of the controversial facts. They had the opportunity of observing the witnesses presented, and it was their function to pass upon the credibility of these witnesses in arriving at the facts. Since the cause was fairly tried and no complaint is made as to the admissibility of evidence or the charge to the jury on questions relating to the determination of facts, we are not disposed to disturb the judgment on the ground that the verdict is not supported by the greater weight of the evidence.

The remaining point assigned for reversal is that the service of garnishment summons created a lien on the goods in the possession of the garnishee defendants belonging to the original defendant in execution, by reason whereof it became the duty of the garnishee defendants, after service of summons, to retain the identical property until the order of court thereafter entered. This presents a purely legal question involving a determination of the rights and duties of one named as defendant in a garnishment proceeding, after the service of garnishment summons and prior to the rendition of any judgment in the garnishment proceeding. More specifically, the ultimate question for determination is whether, after service of garnishment summons, these brokers were obligated to transact business on order of their customer, the judgment debtor, or whether the res was held subject to order of

court, not to be disturbed by direction of the debtor. In presenting this question defendants argue that the various sections of the garnishment statute must be read together to ascertain the intendment of the legislature and the rights and obligations of the various parties in interest thereunder. Defendants' brief presents an analysis of the various sections of the act. The gravamen of their argument is that the service of garnishment summons created a *lien* upon the goods and effects of the original defendant in possession of E. A. Pierce & Co., and from and after the date of the service the property remained in *custodia legis*. They point out that under sec. 21 of the Garnishment Act (Ill. State Bar Stats. 1935, ch. 62, ¶ 21; Jones Ill. Stats. Ann. 109.304) the plaintiff may be allowed, under an order of court for that purpose, to pay or tender the amount due the garnishee, who may thereupon deliver the goods, chattels, choses in action and effects in his hands which are mortgaged or pledged or in any way liable for the payment of the debt, to the officer who holds the execution and they say that under this section of the statute it became the duty of E. A. Pierce & Co., in this proceeding, to hold the securities in the account intact so that they would be in position to comply with any order of court that *might* be entered consistent with the provisions of the statute. Sec. 24 provides that when any garnishee has in his hands or under his control any goods, chattels, choses in action or effects belonging to or which he is bound to deliver to the defendant, with or without condition, the court may make any and all proper orders in regard to the delivery thereof to the proper officer, and the sale or disposition of the same, and ''discharge of any lien thereon, and may authorize the garnishee to sell any such property or collect any chose in action and account for the proceeds thereof,'' or appoint a receiver to take possession and sell, collect or otherwise dispose

of the property, and "make all orders in regard thereto which may be necessary or equitable between the parties." It is urged that this section of the statute, as well as sec. 21 and other portions of the act, when considered together, emphasizes the fact that it was the intendment of the legislature to vest in the court control of the proceedings, and that as long as the court had jurisdiction of the matter, the garnishees, for their own protection, would not have been justified in selling the securities at Kryl's direction. *Stevens v. Dillman,* 86 Ill. 233; *Becker v. Illinois Cent. R. Co.,* 250 Ill. 40; *Silberman-Becker Corp. v. Hummel,* 62 F. (2d) 285, where the Illinois garnishment act was involved; *Sanders v. Armour Fertilizer Works,* 292 U. S. 190, and other authorities are cited, which defendants' counsel say establishes the law in Illinois that the service of garnishment summons creates a lien upon the goods in the hands of the garnishee.

Plaintiff on the other hand relies principally upon the early case of *Bigelow v. Andress,* 31 Ill. 322, decided under a former statute, wherein the court held (p. 332) that "By the service of the garnishee process, there can be no pretense that the property is, in any sense, transferred to the officer, or that he thereby acquires any right to control it. The garnishee still has the right to retain it, and by the service, only becomes liable to account for it *or its proceeds,* if judgment shall be rendered against him on the trial. The statute does not prohibit him from disposing of it, but only renders him liable on failing to produce it, to satisfy the judgment." (Italics ours.)

Under the earlier statute no provision similar to that contained in the present act was made for the sale of property after the service of garnishment summons, and the court held that inasmuch as garnishment proceedings were unknown to the common law, if a lien exists by virtue of the service of garnishment

process it could only be by virtue of the statute, and that the statute did not in terms make such service a lien upon the effects of the debtor in the hands of the garnishee.

Plaintiff argues that the word "lien," as used in the authorities cited by defendants, is a term loosely used defining the relative rights of creditors between themselves, and is not applicable to the rights of the garnishor to goods in the hands of the garnishee. His counsel cite a statement in 28 Corpus Juris, sec. 350, at p. 252, discussing the manner in which the word "lien" is frequently used, as follows:

"It would seem that unless the statutes expressly so provide the service of a writ or summons in garnishment or trustee process does not in the strict sense create a lien upon any specific property in the hands of the garnishee or trustee *but gives rise only to a contingent personal liability to respond therefor to any judgment which may thereafter be recovered by plaintiff against defendant.* However, the right acquired by plaintiff is frequently described as a lien, or an equitable lien, or *quasi* lien, or as an inchoate lien, which must be perfected by judgment against the garnishee; more accurately, it is a specific right conferred upon plaintiff to the indebtedness or property for the payment of his claim over and above mere general creditors." (Italics ours.)

The view that we take of this proceeding does not require that we determine whether the service of garnishment summons on E. A. Pierce & Co. created a specific lien in favor of the garnishor. The securities in question were pledged for Kryl's debt, and under the statute the garnishor had the privilege of applying to the court for an order allowing them to pay the amount due the garnishee. In that event the court would have been empowered under the statute to require the garnishee to deliver the securities to the offi-

cer holding the execution. However, no such application was made, and under the circumstances E. A. Pierce & Co. were under no duty to continue to hold the securities in the face of the repeated insistence of Kryl that they be sold. Certainly, the garnishee does not have to wait indefinitely until such an order is entered. The garnishment creditor is required to act diligently if he desires to obtain the benefits of sec. 21, and if he does not do so there is no compulsion to hold the property. It is difficult to reconcile the argument that the securities were in *custodia legis* and could not be sold without an order of court, with the fact that eventually they were sold by E. A. Pierce & Co. in a falling market without such order.

We think that E. A. Pierce & Co. would have been justified in selling the securities at Kryl's direction under sec. 26 of the act, which provides:

"Nothing contained in this chapter shall prevent the garnishee from selling any goods, chattels, choses in action or effects in his hands for the payment of any demand for which they are mortgaged, pledged or otherwise liable, at any time before the amount due to him is paid or tendered, if such sale would be authorized as between him and the defendant." As between Kryl and E. A. Pierce & Co., the latter was not only authorized but repeatedly requested to sell the securities, and we do not see why, under this section of the statute, they would not have been fully protected in so doing.

Defendants produced as a witness Frank J. Buckholtz, who testified that the only way a broker can ascertain the selling price of a stock is to offer same upon the stock exchange and receive a bid therefor. Based upon this testimony they argue that any margin account is largely speculative, and because of the well known fluctuations in values of securities it becomes the duty of the brokers, for their own protection, to

hold the property intact as of the date of the service of garnishment summons. Nevertheless, it is clear from the record that from July 7 to July 19 the market on these securities was fairly steady, and that they could have been sold at any time during that period for sufficient amounts to produce an equity in Kryl's favor of substantially $40,000. The market quotations on the securities in question were introduced in evidence, and the argument that it would have been hazardous to sell them without knowing what they would produce is not convincing.

The net result of E. A. Pierce & Co.'s refusal to comply with Kryl's direction was that instead of selling all the securities and realizing enough cash to pay the garnishor some $15,000, satisfying Kryl's indebtedness to the bank, and leaving a net equity for Kryl of approximately $25,000, the securities were sold in a falling market, leaving only $6,550 available for the garnishor, to be applied on Kryl's $15,000 debt to the bank and a deficiency of some $9,000 on the judgment. It could not have been the intendment of the Garnishment Act to produce any such inequitable and unnecessary result, when a sale of the securities, while the market was still steady, would have protected all parties in interest and given Kryl a substantial equity.

The rule is well settled that a customer who has a margin account with a broker may at any time order the sale of the securities in his account, and for failure to sell on such direction, resulting in loss, the broker is liable. (*Markham v. Jaudon,* 41 N. Y. 235; *Knowlton v. Fitch,* 52 N. Y. 288; Meyer on the law of stockbrokers and stock exchanges, sec. 134.) This rule of law is not argued or questioned by defendants, nor is the measure of damages awarded by the jury challenged.

Holding as we do that the verdict of the jury as to the controversial facts is supported by the evidence,

and that under the provisions of the Garnishment Act, E. A. Pierce & Co. would have been justified and should have sold the securities on Kryl's order, thus amply protecting all parties in interest, the judgment of the superior court should be affirmed and it is so ordered.

*Judgment affirmed.*

JOHN J. SULLIVAN, P. J., and SCANLAN, J., concur.